# Eric H. Heckett, Petitioner, *v.* Commissioner of Internal Revenue, Respondent.

Docket No. 5160.    Promulgated April 18, 1947.

*Sidney B. Gambill, Esq.*, for the petitioner.
*Homer F. Benson, Esq.*, for the respondent.

**OPINION.**

Harron, *Judge*: Petitioner claims deduction in the sum of $19,-870.24, for a war loss sustained on 17 shares of stock of the Dutch company, under section 127(a)(3) of the Internal Revenue Code, added by section 156 of the Revenue Act of 1942; and deduction for other war losses under section 127(a)(2) in the total amount of $14,-870, which represents the alleged values on December 11, 1941, of the personal property which was left in the Netherlands in 1939. The war loss from destruction of personal property was claimed by petitioner for the first time in an amendment to the petition.

Petitioner has abandoned claim for another war loss, or for a long term capital loss, in the amount of $10,660, which was taken in his original income tax return for the year 1941.[1] Effect will be given under Rule 50 to the abandonment of this item.

1. *The 17 shares of stock in the Dutch company.*—Petitioner contends that the stock was worthless on December 11, 1941, and that, therefore, he is entitled to a war loss deduction under subsection (3) of section 127(a). He has offered evidence about the property of the Dutch company, in which he had an interest through his ownership of the stock. In *Ernest Adler*, 8 T. C. 726, a rule was set forth about the burden of proof upon a taxpayer claiming a war loss under section 127. It was said that a taxpayer must establish ownership of the

---

[1] Petitioner deducted in his original return, as a long term capital loss, one-half of the cost of stock in two Dutch companies, in the amount of $33,312.50. The respondent denied the deduction. The claim for loss which is abandoned for the year 1941 relates to 40 shares of stock of a corporation known as Electromagnetische–Extracite My. N. V. Petitioner made claim for deduction under section 127 (a) of the code with respect to 17 shares of stock of another Dutch company for the first time in an amended income tax return and in his petition.

property involved as of the time of the presumed loss to become entitled to a deduction under section 127(a)(2) and (3), because it is fundamental to all loss claims that the taxpayer must have something to lose in order to sustain a loss.

In this case petitioner has met the required proof through the testimony, given under deposition, of Jan Aandewiel of Amsterdam. The deposition was taken in Amsterdam before an American consul on April 15, 1946. Aandewiel testified that all of the assets of the Dutch company were not destroyed or seized by the enemy in its invasion of the Netherlands, i. e., prior to December 11, 1941, and that the Dutch company was in possession of all of its assets on December 11, 1941, the date on which the United States declared war on Germany.

All of the property of the Dutch company is deemed to have been destroyed or seized on December 11, 1941, under subsection (2) of section 127(a). It follows that the 17 shares of stock of the company became worthless on December 11, 1941.

It is held that petitioner is entitled to deduction for a loss under subsection (3) of section 127(a). See Regulations 111, pp. 566 and 574; section 29.127(a)–1 and 29.127(a)–4.[2]

Petitioner now concedes that he recovered part of his invested capital in 1939 to the extent of $11,844.96, and he claims loss in the amount of $19,870.24. On brief, for the first time, respondent raises a question about the amount of the adjusted cost of the stock, contending that $6,706.79 of the proceeds received in 1939 should not be treated as payment of salary. Petitioner objects to our considering the contention, claiming prejudicial surprise.

We think the objection is well founded. The contention of the respondent raises a question about the liability, if any, of petitioner for income tax for the year 1939 on account of receipt in 1939 of payment of $6,706.79 salary for services which he rendered while he was in the Netherlands to the Dutch company. The pleadings do not cover such question; the taxable year 1939 is not before us in this proceeding; and the respondent has made the contention for the first time, after the trial, on brief. If the respondent had desired to inject this question into this proceeding, he should have done so at the trial, at the latest, as required by the rules of the Court. He did not do so. If he had done so, petitioner would have had notice which would have caused him to introduce evidence which is not in the present record. Respondent did not move to amend his answer. Since the question is not properly before us, it is not considered. (The point raised by respondent does not involve subsection (c) of section 127.) See *Went-*

---

[2] Regulations 111 set forth in section 29.127, the regulations under section 127 (as added by sec. 156 (a) of the 1942 Revenue Act), which were issued originally by T. D. 5258, April 13, 1943, in C. B. 1943, p. 415.

*worth Manufacturing Co.*, 6 T. C. 1201, 1208, and cases cited therein, and *Maurice P. O'Meara*, 8 T. C. 622. From the record before us it is concluded that $6,706.79 of the proceeds of $18,551.75 realized upon the sale of securities in 1939 represented earnings of petitioner from past services rendered in the Netherlands; and that $11,844.96 represented return of part of the investment of petitioner in the stock.

It is held that the adjusted cost of the 17 shares of stock of the Dutch company is $19,870.24, and that petitioner is entitled to deduction of that amount as the loss which he sustained in 1941.

2. *Loss of personal property.*—A deduction in the amount of $14,870 is claimed under subsection (2) of section 127 (a). The statutory provision refers to property within an area under the control of an enemy country on the date war with such country was declared by the United States. The Commissioner has construed the statutory provision to mean that the property must be in existence on the date prescribed therein in order that it may be deemed to have been destroyed or seized on that date. See Regulations 111, page 566, section 29.127 (a)–1, where it is also stated that "If, before such time, the property was destroyed or confiscated, section 127 is not applicable with respect to such property." That interpretation of the statute finds support in the report of the Finance Committee of the Senate [3] where it is said, "However, no loss can be taken under this provision which occurred prior to December 7, 1941," the reference being to all of the provisions of section 127. See Senate Rept. No. 1631, 77th Cong., 2d sess., pp. 40 and 130. Accordingly, the first question is whether the property was in existence on December 11, 1941.

In *Ernest Adler*, *supra*, we decided a question of whether for the purposes of a loss deduction under section 127 (a) (2) and (3) a taxpayer must prove ownership of the property involved as of the date of the presumed seizure or destruction. In this case, the question is closely akin, for to own property, the property must exist.[4] The personal property was left in the Netherlands in 1939. During 1940 and 1941 the Netherlands was an area under the control of Germany. Some of the property was left with the petitioner's aged mother, who was carried away by the Germans at an unknown time. In the *Adler* case we said that:

The presumed loss and the presumed time of its occurence under subsection (2) constitutes in a sense an anticipatory or accelerated loss and does not operate to postpone losses previously sustained.

---

[3] The statutory provision which became section 127 of the code originated in the Senate.

[4] In *Robert E. Ford*, 6 T. C. 499, the facts relating to a claimed war loss on bonds of Lombard Electric Co., an Italian corporation, were stipulated. It was concluded that the facts as stipulated brought the claim within both the statutory provisions of section 127 (a) (2) and the Treasury regulations promulgated pursuant thereto (p. 503 of the report). One question in this case is whether the facts bring the claim within the statutory provision and the regulations.

The property left in the Netherlands was separated into three parts: miniatures, which were left with petitioner's mother, of an alleged value of $3,000; silverware and other articles, which were left in the safe and in the office of the Dutch company in Amsterdam, of an alleged value of $2,000; and household furnishings, which were stored in a warehouse near Hilversum, of an alleged value of $9,870.

The deposition of Jan Aandewiel establishes the fact that the goods which were stored in the office in Amsterdam were in existence on December 11, 1941.

The testimony of petitioner is that he does not know when his mother was seized or what became of her. From this it is to be implied that he does not know what became of property which he left with her. Since the invasion of the Netherlands took place on May 10, 1940, and that country capitulated on May 14, 1940, there was a substantial period of time before December 1941, within which property in the possession of the mother may have been seized or destroyed. Therefore, we may not assume that the property left with the mother was in existence and was within the area of the Netherlands on December 11, 1941. The claim for a war loss deduction in connection with this part of the property must be denied.

The claim for loss of the household furnishings which were stored must also be denied, but for additional reasons discussed later. It is sufficient to say at this point that it seems that petitioner could have established through the deposition of Aandewiel whether the warehouse where the goods were stored was in existence in December 1941. It is a matter of public record that the Germans bombed Rotterdam and Amsterdam heavily when they crossed into the Netherlands on May 10, 1940, and before General Henri Winkelman surrendered on May 14, 1940. See the Encyclopedia Britannica (1942 ed.) vol. 11, p. 667. Aandewiel was the right hand man of petitioner, and it appears that he remained in Amsterdam in 1941. Hilversum is close by. Petitioner has offered no evidence from which we could make a reasonable inference that the household furnishings were in existence on December 11, 1941.

There is a second question under this issue, which relates to proof of the amount of the loss claimed. The Commissioner's regulation treats war losses under section 127 as losses by reason of casualty, the casualty being the presumed destruction or seizure of the property. The regulation sets forth how the amount of a war loss shall be determined. See section 29.127 (b)–1 of Regulations 111, page 579, where it is said, in part:

The loss is determined in the same manner as in the case of any other loss by casualty (see sections 29.23 (e)–1 and 29.23 (f)–1) except that the possibility of recovering such property described in section 127 (a) or (e) or of recovering

any compensation (other than insurance or similar indemnity) on account of such property or interest in the taxable year or in any future taxable year (such as the return of the property, or an award by a government, upon the termination of the war) is disregarded both in determining whether the loss is evidenced by a closed and completed transaction and in determining the amount of the loss. Insurance or any other certain indemnity by a government is not disregarded.

Under the above quoted part of the regulations, petitioner in this case must show the basis of the property involved, i. e., the cost, adjusted if adjustment is required.[5] In the group of household furnishings which were stored there were at least 65 items, among which was a large trunk filled with linens and 23 family portraits. The schedule in evidence states that the items left in the office of the company were insured for 4,000 guilders. Whether or not some of these personal, nonbusiness items were depreciable property is not shown, but such items as pillows and comforters may have been.

The rule applicable to casualty losses under section 23 (e) (3) is that the deduction for the loss may not exceed costs, and, in the case of depreciable nonbusiness property, may not exceed the value immediately before the casualty. *Helvering* v. *Owens*, 305 U. S. 468. If the taxpayer does not show that his insurance is inadequate, he fails to prove his case. *Ferguson* v. *Commissioner*, 59 Fed. (2d) 893. The same rules apply to losses under section 127, under the quoted part of section 29.127 (b)–1, *supra*. Insurance is not disregarded.

Petitioner has failed to show the cost of any of the items involved in the claim for a loss in the total amount of $14,870. He purchased most of the items after 1923. Some items were purchased in Italy at various times. The loss claimed is measured in American dollars. Petitioner has not shown costs measured in American dollars.[6] In some instances, petitioner could not state how he arrived at the amount set opposite each item in his petition, as the amount of the claimed loss. Petitioner introduced no evidence about the adequacy of insurance on insured articles.

Since petitioner's total war loss deduction may not exceed the aggregate of all the costs, and since he has failed to prove costs, his claim under this issue fails. Petitioner is not entitled to a war loss deduction in the amount of $14,870, or in any lesser amount.

*Decision will be entered under Rule 50.*

---

[5] See section 23 (e) (3) of the code, losses by individuals (losses sustained not compensated by insurance or otherwise) ; and section 29.23 (e) of Regulations 111, p. 105.

See, also, section 23 (i) of the code, basis for determining loss; and section 29.23 (i)–1 of Regulations 111, p. 114; and section 29.113 (b) (1)–1 of Regulations 111, pp. 409 and 411.

See, also, Mertens, Law of Federal Income Taxation, vol. 5, pp. 208, 209, paragraphs 28.50, 28.51, and 28.53, and footnotes.

[6] For example, petitioner would have to translate his costs in a foreign currency to dollars at the exchange rates for guilders, lira, etc., at the respective times of each purchase. Petitioner did not do this.