BENJAMIN ABRAHAM, PETITIONER, *v.* COMMISSIONER OF INTERNAL
REVENUE, RESPONDENT.

Docket No. 6431.   Promulgated August 25, 1947.

*Hyman L. Goldstein, Esq.*, for the petitioner.
*J. Frost Walker, Jr., Esq.*, for the respondent.

224

OPINION.

BLACK, *Judge*: The first issue we have to decide is whether petitioner is entitled to the deduction of a war loss from his 1941 income and, if so, how much he is entitled to deduct. It has been held by the decided cases of this Court that a taxpayer, to take a war loss deduction in 1941 under section 23 (e) of the Internal Revenue Code, must prove that the property was in existence during that year; or, to take such loss under section 127, he must prove that it was in existence at the time the United States declared war on Germany. See *Ernest Adler* 8 T. C. 726; *Eric H. Heckett*, 8 T. C. 841. In the instant case petitioner does not claim any loss under section 23 (e). Therefore, that section may be disregarded. He bases his claim entirely under section 127 (a) (2) of the code, as added by section 156 of the Revenue Act of 1942, which reads in part as follows: "Property in Enemy Countries.— Property within any country at war with the United States, or within an area under the control of any such country on the date war with such country was declared by the United States, shall be deemed to have been destroyed or seized on the date war with such country was declared by the United States."

Petitioner made out his 1941 income tax return in March 1942, and it

is his contention that he was permitted by the foregoing statute to assume that all of his property located in German occupied France on December 11, 1941, was lost or destroyed on December 11, 1941. He contends that the statute created a conclusive presumption for the benefit of the taxpayer, who had no way of determining the existence or condition of his property in an enemy occupied country. We think petitioner has correctly stated the general rule as laid down by the applicable statute. However, in cases where the Commissioner, in his determination of a deficiency, has disallowed the deduction of the claimed war loss, there are at least two things which the taxpayer must prove to establish his case: (1) That the property was in existence and owned by the taxpayer on the date war was declared; (2) the cost of such property, properly adjusted for depreciation to the basic date. *Ernest Adler, supra; Eric H. Heckett, supra.* Petitioner claims losses with reference to both real property and personal property, and the facts with reference thereto are set forth in our findings of fact.

We shall first take up the question of his real property loss. In contending that petitioner has failed to prove his real property loss under the applicable statute, respondent stresses Regulations 111, section 29.127 (a)–1, and particularly the following portion thereof:

For property to be treated as resulting in a war loss, such property must be in existence on the date prescribed in section 127 (a) (2) as the date it is deemed destroyed or seized  *  *  *  and for the taxpayer to claim a loss with respect to such property he must own such property or an interest therein at such time. If, before such time, the property was destroyed or confiscated, section 127 is not applicable with respect to such property. For example, a taxpayer owned property in an enemy country before war was declared on such enemy by the United States, and such property was confiscated by the enemy before the date war was declared. The seizure was not in the course of military or naval activities. The taxpayer may not claim a war loss with respect to such property under section 127.

It is respondent's contention that petitioner has failed to prove that the 10 acres of ground which petitioner owned at Courgent, France, together with the improvements thereon, were in existence on December 11, 1941. We do not agree with this contention.

It is true, of course, that petitioner testified that he last saw the property in May 1940, when he left Courgent with his family in fleeing before the advancing German army, and that he did not know what its condition was in 1941, when the United States declared war on Germany.

However, petitioner also testified that he went back to France in 1946 and found his real property still there, together with the improvements thereon, except one of the small houses. We think this is sufficient proof that the property was in existence, with the exception of the one small house, when war was declared on December 11, 1941,

and that petitioner is entitled to take his loss under section 127 (a) (2) of the code if he has properly proved the amount of his loss.

The Commissioner's regulations treat war losses under section 127 as losses by reason of casualty, the casualty being the presumed destruction or seizure of the property. The regulations set forth how the amount of war losses shall be determined. See section 29.127 (b) (1) of Regulations 111, where it is said in part:

The loss is determined in the same manner as in the case of any other loss by casualty (see sections 29.23 (e)–1 and 29.23 (f)–1) except that the possibility of recovering such property described in section 127 (a) or (e) or of recovering any compensation (other than insurance or similar indemnity) on account of such property or interest in the taxable year or in any future taxable year (such as the return of the property, or an award by a government, upon the termination of the war) is disregarded both in determining whether the loss is evidenced by a closed and completed transaction and in determining the amount of the loss. Insurance or any other certain indemnity by a government is not disregarded.

As we said in *Eric H. Heckett, supra*: "The rule applicable to casualty losses under section 23 (e) (3) is that the deduction for the loss may not exceed costs, and, in the case of depreciable nonbusiness property, may not exceed the value immediately before the casualty. *Helvering* v. *Owens*, 305 U. S. 468."

Petitioner testified at the hearing that he purchased the real property in question in 1932 for a total of francs, which at the then exchange rate equaled $5,841.88, including transfer tax, and that the property was improved at the time. No testimony was given from which we could allocate this cost between the land and improvements.

Petitioner further testified that after he purchased the property in 1932, and prior to 1937, he improved the property at a total additional cost of 300,000 francs, or $11,760, using the same rate of exchange as we heretofore mentioned. Petitioner does not give the dates of these improvements or any other data by which we could determine with any degree of accuracy the depreciation which took place between the dates that such improvements were made and December 11, 1941, when war with Germany was declared. But, as we have already pointed out, petitioner did own on that date property which was situated in the war zone, and it is clear that it had considerable value. Are we to deny him any loss because we can not determine the amount of the loss with the satisfactory accuracy which we would like? We think not. It seems to us that under the facts of the instant case we should apply the doctrine announced by the court in *Cohan* v. *Commissioner*, 39 Fed. (2d) 540, and make the best approximation of petitioner's loss that we can under the evidence. In the *Cohan* case the Second Circuit, in holding that the Board of Tax Appeals erred in not allowing as a deduction to the taxpayer some portion of the entertainment expenses which he was claiming, said:

The Board refused to allow him any part of this, on the ground that it was impossible to tell how much he had in fact spent, in the absence of any items or details. The question is how far this refusal is justified, in view of the finding that he had spent much and that the sums were allowable expenses. Absolute certainty in such matters is usually impossible and is not necessary; the Board should make as close an approximation as it can, bearing heavily if it chooses upon the taxpayer whose inexactitude is of his own making. * * * It is not fatal that the result will inevitably be speculative. Many important decisions must be such.

As we have already stated, petitioner's real estate, together with improvements thereon, cost him $5,841.88 in 1932, and between that date and 1937 he added improvements which cost him $11,760, making total cost of the land and improvements $17,601.88. From the meager evidence which we have as to the kind and nature of the improvements, we think 50 per cent of the above total costs will, in all events, be sufficient to absorb the depreciation which took place from the dates of original acquisition of the property and the adding of the improvements to the date of the declaration of war with Germany, including the one small building which was gone. This adjustment reduces the value of the property on the basic date to $8,800.94, and we hold that amount is the measure of petitioner's loss on this real property under section 127 (a) (2) of the code. Cf. *Isbell-Porter Co.* v. *Commissioner*, 40 Fed. (2d) 432, reversing 12 B. T. A. 621; *Conrad & Co.* v. *Commissioner*, 50 Fed. (2d) 576, reversing 13 B. T. A. 1332. *Max German*, 2 T. C. 474. The fact that petitioner was able to repossess this property when he returned to France in 1946 does not prevent him from taking his loss with respect to the property in 1941 under section 127 (a) (2), because that section provides that such property "shall be deemed to have been destroyed or seized on the date war with such country was declared by the United States."

We next take up the question as to whether petitioner is entitled to deduct as a war loss the cost of oil paintings, books, and oriental rugs which cost him $12,186.30, on the basis of the same exchange rate heretofore used, and furniture which cost him $2,530, all of which was situated in the buildings on the land which he owned at Courgent, France, and was there when he fled before the advancing German army in May 1940. The facts show that oil paintings, books, and rugs that cost petitioner $4,155.20, and furniture that cost petitioner $300 were there on the premises in 1946, when petitioner returned for a temporary visit to France. The balance of the property was gone. Petitioner testified that he was without any knowledge when this personal property which was not there when he went back had been taken. He did not know whether it had been seized or stolen in 1940 or 1941, or what had become of it. Therefore it seems plain that under the rule announced in *Ernest Adler, supra*, petitioner has failed to prove that this particular property was in existence December 11, 1941. There-

fore as to that part of his claimed loss, petitioner can not prevail. See also the second issue in *Eric H. Heckett*, relating to loss of personal property.

We now come to the question whether petitioner is entitled to take a loss of $4,155.20 on account of the oil paintings, books, and rugs which were still on the premises when petitioner returned in 1946, and the $300 for furniture which was also still there.

Here again as to this particular personal property which petitioner found on his return to France, and which was in existence, December 11, 1941, the question is, as it was in regard to the real property mentioned above, Has petitioner proved the proper measure of his loss?

Petitioner has testified as to the cost of this property, and it is from this testimony that we have made our findings of fact as to its cost. Petitioner has not, however, given us sufficient facts and data from which we could accurately compute depreciation on such property from the date of its acquirement to December 11, 1941.

We apply the same rule here as we applied to the real property, and for the same reason. From the meager evidence which we have as to the kind and nature of this property, we think 50 per cent of the cost of this particular personal property will be sufficient to absorb the depreciation which took place between the date of its acquisition to the date of the declaration of war with Germany. This adjustment reduces the value of the oil paintings, books, and rugs to $2,077.60 and of the furniture to $150, on the basic date, and we hold that these amounts represent the measure of petitioner's loss on these personal property items under section 127 (a) (2) of the code.

As to whether the amounts which we have herein allowed as losses to petitioner under section 127 (a) (2) were income to him in 1946 when he returned to France and repossessed the property, we express no opinion. We do not have that year before us.

The second issue relates to petitioner's claimed expense for entertainment of customers and prospective customers of H. S. Cramer & Co. and for traveling expenses, for which he was not reimbursed. Petitioner did not keep any record of separate items of these expenditures. However, he testified as to them and as to the circumstances under which he made them, and we are convinced that he expended at least $500 for entertaining customers of H. S. Cramer & Co. in a business way in New York City for which he was not reimbursed by the corporation. He earned a salary of $28,000 as one of the chief executive officers of that company, and he testified that in such capacity he felt that it was good business policy to make the expenditures. We think this $500 is deductible under section 23 (a) (1) (A) of the code. Cf. *Lewis F. Jacobson*, 6 T. C. 1048. It may well be that petitioner expended for traveling expenses the balance of the $750 for which he claims deduction, but we do not think he has fur-

nished us with sufficient facts to justify us in allowing him a deduction of anything for traveling expenses. As respondent points out in his brief:

In *Commissioner* v. *Flowers* 326 U. S. 465, the Supreme Court stated that three conditions must be satisfied before a traveling expense deduction may be made under section 23 (a) (1) (A) of the Internal Revenue Code:

(1) The expense must be a reasonable and necessary traveling expense, as that term is generally understood. This includes such items as transportation fares and food and lodging expenses incurred while traveling.

(2) The expense must be incurred "while away from home."

(3) The expense must be incurred in pursuit of business. This means that there must be a direct connection between the expenditure and the carrying on of the trade or business of the taxpayer or of his employer. Moreover, such an expenditure must be necessary or appropriate to the development and pursuit of the business or trade.

We do not think petitioner's evidence meets the foregoing tests for a deduction for traveling expenses. Therefore, petitioner's claim for a deduction, in so far as it relates to traveling expenses, is denied.

*Decision will be entered under Rule 50.*