ABRAHAM ALBERT ANDRIESSE, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 17764. Promulgated May 31, 1949.

*Jay O. Kramer, Esq.*, for the petitioner.
*Whitfield J. Collins, Esq.*, for the respondent.

OPINION.

VAN FOSSAN, *Judge*: The question at issue is, Did the Commissioner err in holding that the petitioner was not entitled to claim a casualty loss as the result of the seizure of certain Dutch guilder accounts in 1942 and 1943? The parties, by argument on brief, have reduced the problem involved to the question, Is section 127 of the Internal Revenue Code[1] (added by section 156 of the 1942 Revenue Act), which deals with war losses, an exclusive provision superseding all other statutory provisions allowing losses and specifically section 23 (e) of the code,[2] which allows deduction of losses due to casualties?

A similar question was discussed in *Eugene Houdry*, 7 T. C. 666. In that case the Commissioner disallowed the loss claimed to have been sustained in 1941 because the taxpayer did not own the property located in France when the United States entered the war in December 1941. The French citizenship of the taxpayer was abrogated by

---

[1] SEC. 127. WAR LOSSES [added by sec. 156, 1942 Act].

(a) CASES IN WHICH LOSS DEEMED SUSTAINED, AND TIME DEEMED SUSTAINED.—

For the purposes of this chapter—

(1) PROPERTY NOT IN ENEMY COUNTRIES.—Property destroyed or seized on or after December 7, 1941, in the course of military or naval operations by the United States or any other country engaged in the present war shall be deemed to have been destroyed or seized on a date chosen by the taxpayer in the manner provided in paragraph (4), which falls between—

(A) the latest date, as established to the satisfaction of the Commissioner, on which such property may be considered as not destroyed or seized, and

(B) the earliest date, as established to the satisfaction of the Commissioner, on which such property may be considered as having already been destroyed or seized.

For the purposes of this paragraph property within an area which comes under the control of a country at war with the United States after the date war with such country is declared by the United States shall be deemed to have been destroyed or seized in the course of military or naval operations by such country, and the date specified in subparagraph (A) shall not be later than the latest date determined by the Commissioner as the date on which such area was under the control of the United States or a country not at war with the United States, and the date specified in subparagraph (B) shall not be later than the earliest date determined by the Commissioner as the date on which such area may be considered under the control of the country which is at war with the United States.

(2) PROPERTY IN ENEMY COUNTRIES.—Property within any country at war with the United States, or within an area under the control of any such country on the date war with such country was declared by the United States, shall be deemed to have been destroyed or seized on the date war with such country was declared by the United States.

[2] SEC. 23. DEDUCTIONS FROM GROSS INCOME.

In computing net income there shall be allowed as deductions:

*        *        *        *        *        *        *

(e) LOSSES BY INDIVIDUALS.—In the case of an individual, losses sustained during the taxable year and not compensated for by insurance or otherwise—

*        *        *        *        *        *        *

(3) of property not connected with the trade or business, if the loss arises from fires, storms, shipwreck, or other casualty, or from theft. No loss shall be allowed as a deduction under this paragraph if at the time of the filing of the return such loss has been claimed as a deduction for estate tax purposes in the estate tax return.

the Vichy Government in May 1941, as a result of which the property was shortly thereafter confiscated and seized by the Vichy Government. This Court stated, in part, as follows:

Only if the provisions of section 127, Internal Revenue Code, dealing with "war losses," were intended to be exclusive can respondent's disallowance of the present claim be sustained, even on his own contention. * * *

*       *       *       *       *       *       *

*If respondent is correct, however, there was no intention to have the legislation apply to losses occurring prior to December 7, 1941.* So approached, the presumption of destruction on the date of American entry into the war is not irrebuttable, nor in fact applicable, if the facts show that the property had been destroyed or seized, even by a subsequent enemy, prior thereto. But that would merely mean that Congress intended no reference, affirmative or negative, to other losses. It may not be taken to show that a loss not covered by the section has, if otherwise deductible, been forbidden. Stated differently, the very scope attributed by respondent to the war loss treatment negatives any assumption that it was intended to be exclusive, or to apply as a bar to circumstances not embraced within its terms. And nothing in the remaining provisions or the legislative history indicates otherwise. [Italics supplied.]

If, as a consequence, respondent's interpretation is correct the loss is nevertheless deductible under general principles of long standing. Petitioner was not required to assume the risk of successful termination of the war and the possible restoration of the confiscated property. *United States* v. *White Dental Mfg. Co., supra.* We accordingly refrain from passing upon the precise applicability to the present facts of section 127, and find it sufficient to conclude that in any event the deduction should have been allowed. * * *

*       *       *       *       *       *       *

In this case, however, the property was not destroyed or seized prior to December 11, 1941. It was not until May 30, 1942, that the German military authorities compelled the transfer to their depository of 13,-180.53 guilders from petitioner's ordinary account. On or about November 2, 1942, and on or about May 3, 1943, the German military authorities confiscated 226,125 guilders and 209,078.06 guilders, respectively, thus completely closing out petitioner's deposit account.

Section 127 (a) (2) provides that property within an area under the control of any country at war with the United States on the date war with such country was declared by the United States "shall be deemed to have been destroyed or seized on the date war with such country was declared by the United States." The facts bring this case squarely within that section.

What was said with respect to the meaning of the word "deemed" in *Douglas* v. *Edwards* (CCA–2), 298 Fed. 229; reversed on other grounds, 269 U. S. 204, is equally apposite herein. That case involved section 31 of the Revenue Act of 1916, as amended by section 1211 of the Revenue Act, approved October 3, 1917, which provided that any distribution to stockholders in the year 1917, or subsequent years, "shall be deemed to have been made from the most recently

accumulated undivided profits or surplus." The court in its opinion stated as follows:

> * * * There is also a difference of opinion as to the meaning of the word "deemed."
>
> We may dispose at the outset of the meaning of "deemed." If it had been intended that this word should mean a rebuttable and not a conclusive presumption, the word "presumed" could readily have been used, and that is a word which is very familiar in many statutes. "Deemed," and its synonym, "regarded," according to definitions in cases and dictionaries, is the equivalent of "considered" or "adjudged." *Leonard* v. *Grant* (C. C.) 5 Fed. 11, 16; *U. S.* v. *Doherty* (D. C.) 27 Fed. 730, 734; *Michel* v. *Nunn* (C. C.) 101 Fed. 423; *Cardinel* v. *Smith*, 5 Fed. Cas. 45, 47; *Walton* v. *Cavin*, 16 Q. B. 48, 81.

See also *Heiner* v. *Donnan*, 285 U. S. 312, wherein it was held that Congress, by the enactment of section 302 (c) of the Revenue Act of 1926, providing that certain transfers made within two years prior to the death of decedent, "shall be deemed and held to have been made in contemplation of death within the meaning of this title," did not create "a rebuttable presumption," but that it created a presumption "definitely conclusive—incapable of being overcome by proof of the most positive character." See also *David Schnur*, 10 T. C. 208; *Benjamin Abraham*, 9 T. C. 222, and *Eric H. Heckett*, 8 T. C. 841, wherein loss deductions were allowed under section 127 (a) (2), although the property for which the deductions were claimed was shown by the taxpayer to have been in existence subsequent to 1941. Such evidence as to the existence of the property in later years was accepted as proof that the property existed on December 11, 1941, the date war was declared by the United States, a fact which the taxpayer must prove to establish his claim to a deduction under section 127. All the deductions were claimed in 1941.

The petitioner suggests it is seriously open to question whether a conclusive presumption that property was destroyed at a given time would be constitutional, citing *Heiner* v. *Donnan, supra.* That case involved a statute requiring the inclusion of the value of property transferred by a decedent within two years prior to his death for purposes of the death tax upon an assumption of fact which the taxpayer was forbidden to controvert. Herein claim is made for the allowance of deductions from gross income for the purpose of the income tax. Allowance of deductions from the gross income "does not turn on general equitable considerations." *Deputy* v. *DuPont*, 309 U. S. 488. It "depends upon legislative grace; and only as there is clear provision therefor can any particular deduction be allowed." *New Colonial Ice Co.* v. *Helvering*, 292 U. S. 435. Since deductions depend upon legislative grace, the enactment of section 127 did not deprive taxpayer of any right, constitutional or otherwise. The petitioner could have claimed the deduction in 1941, but chose not to do so.

It is argued by petitioner that the presumption of loss governs only if the taxpayer claims a loss under section 127 and that section 23 (e) (3), if invoked by the taxpayer, still exists as a companion remedy to section 127. In our opinion the conclusive presumption in section 127 (a) (2) negatives any purpose on the part of Congress to permit the taxpayer an election to claim a loss as herein involved under section 127 in 1941 or under section 23 (e) (3) in later years when actual destruction or seizure occurs.

The petitioner claims the deductions under section 23 (e) (3). Section 23 (e) deals with the deduction of losses generally. Section 127 deals with particular or specific losses. "It is an old and familiar rule that, 'where there is, in the same statute, a particular enactment, and also a general one, which, in its most comprehensive sense, would include what is embraced in the former, the particular enactment must be operative, and the general enactment must be taken to affect only such cases within its general language as are not within the provisions of the particular enactment.' "> *United States* v. *Chase*, 135 U. S. 255, 260; *Ginsberg & Sons* v. *Popkin*, 285 U. S. 204, 208; *Max Freudmann*, 10 T. C. 775, 795; and *Ruud Manufacturing Co.*, 10 T. C. 14, 16; affd. (CA–3), 173 Fed. (2d) 222. Under the above rule, section 23 (e), being a general enactment, is not applicable, but the particular enactment, section 127 (a) (2), is operative and applicable. Section 127, therefore, is exclusive and supersedes the provisions of section 23 (e) to the extent of the losses embraced in the former.

The petitioner is not entitled to the claimed loss deduction in 1942 and 1943 under section 23 (e) (3).

Reviewed by the Court.

*Decision will be entered for the respondent.*