Estate of Edwin Raymond Fisher, deceased, Jas. Maxwell Fassett, executor, and Ruth Hillock Fisher, surviving widow of Edwin Raymond Fisher v. Commissioner.
Estate of Edwin Raymond Fisher v. Commissioner
Docket No. 26010.
United States Tax Court
1952 Tax Ct. Memo LEXIS 181; 11 T.C.M. (CCH) 607; T.C.M. (RIA) 52185; June 17, 1952
*181 Petitioners failed to introduce any evidence as to cost or other applicable basis of property lost by theft. Held, that petitioners have not maintained their burden of proof as to an essential element of their case. 2. Rule of Cohan v. Commissioner, 39 Fed. (2d) 540, applied in determining the petitioners' right to a deduction for entertainment expenses. 3. Federal excise taxes held to be nondeductible for income tax purposes. Jas. Maxwell Fassett, Esq., 55 Liberty St., New York, N. Y., for the petitioners. Graham Loving, Jr., Esq., for the respondent. HILL Memorandum Findings of Fact and Opinion The respondent determined a deficiency of $2,532.26 in petitioners' income tax for the taxable year 1946. The issues raised by petitioners' appeal from that determination are three: 1. Whether the respondent erred in his determination that the sum of $3,680 claimed by the petitioners as a deduction for losses incurred by theft should be disallowed. 2. Whether the petitioners were entitled to deduct the sum of $1,875 claimed by petitioners as an ordinary and necessary business expense incurred in the entertainment of customers or any part thereof. 3. Whether the respondent erred in his determination that certain taxes paid by the petitioners and claimed *183 as a deduction were Federal excise taxes and hence nondeductible for income tax purposes. Findings of Fact The petitioners are Ruth Hillock Fisher and the estate of Edwin Raymond Fisher, deceased, represented here by the executor, Jas. Maxwell Fassett. A joint return was filed by decedent and Ruth Hillock Fisher for the calendar year 1946 with the collector of internal revenue for the second district of New York. On April 10, 1946, the decedent and Ruth Hillock Fisher noted the disappearance of certain jewelry owned by Ruth. The jewelry had been last seen by Ruth on April 7, 1946, when placed by her in a jewelry box in the top drawer of her dresser. There are no facts indicating a forceful entry into the apartment. However, the facts indicate that the apartment could have been entered by unauthorized persons using a master key usually secreted within the building elevator for the use of tenants. Upon discovery that the jewelry was missing a thorough, but unsuccessful, search of the apartment occupied by decedent and Ruth was made. Thereafter the New York City police department was notified and an investigation was conducted by them. At that time the items lost were reported *184 by petitioners as 1 bar pin
platinum, rope design, ap-
proximately 125 diamonds,
stamped on back initials
"B.S. & F."
$1,000
1 bracelet
platinum, flexible, approxi-
mately 32 diamonds
800
1 watch
ladies' - foreign, Vienese [Viennese]
design, Y.M. wrist
50
Total
$1,850
Thereafter Ruth was asked by the New York City police department to inspect several items of jewelry in pawn shops. On these occasions she could identify none of the jewelry as her own. No supplemental report [*] made. None of the items of jewelry has been recovered by the police. None of the jewelry was covered by insurance and the loss involved has not been otherwise compensated for. In their joint income tax return filed for 1946 the petitioners listed five articles as stolen. We find as a fact that three items were lost by theft: 1 bar pin
platinum, rope design, approximate-
ly 125 diamonds - stamped on back
initials "B.S. & F."
1 bracelet
platinum, flexible, approximately 32
diamonds
1 watch
ladies' - foreign, Viennese design,
Y.M. wrist
During the taxable year the decedent was employed by Eastman, Dillon & Company, a stock *185 brokerage firm doing business in New York City, as a customers' representative. During the calendar year 1946 the decedent brought to Eastman, Dillon & Company customers, whose total business transactions, including the purchase of new securities and the sale of old securities, involved from four to five million dollars. The decedent received as compensation for this service commissions of $21,275. It is an established custom of New York securities' salesmen to entertain their customers in order to continue the relationship of customer and representative and to secure new customers. In accordance with this custom the decedent incurred expenses in his practice of entertaining his customers. It was decedent's custom to have luncheon and cocktails with various of his customers every business day. His business day ended at three o'clock in the afternoon. During the remainder of the afternoon the petitioner spent much of his time over cocktails with his customers or with those whom he sought to make customers. The decedent incurred entertainment expenses through the necessity of entertaining his customers in his New York apartment and at the summer home maintained by him at Hampton *186 Bays, Long Island. Decedent had been in his line of business for 22 years in 1946. He ranked within the first ten of all the customers' representatives employed by Eastman, Dillon & Company. The business of securities' salesman is highly competitive. In order to maintain his competitive position in his field it was necessary for the decedent to entertain his customers. For this purpose he spent $800 during 1946. The taxes paid by the petitioners during the calendar year 1946, and disallowed by the respondent, were Federal excise taxes. Opinion HILL, Judge: The parties disagree first of all as to the existence of the loss. Our findings as to the items which were stolen are dispositive of this question. We base our findings upon the record and the report made by the petitioners to the New York City police department shortly after discovery of the theft. Under the provisions of section 23 (e) (3), a taxpayer is permitted a deduction for loss of property by theft. Section 23 (i) directs that the basis for determining the amount of the deduction for theft be the "adjusted basis" as provided in section 113 (b). Section 113 (b) indicates that the adjusted basis for determining gain *187 or loss for the sale or other disposition shall be the basis determined under section 113 (a), subject to certain adjustments. Pertinent provisions of section 113 are as follows: "SEC. 113. ADJUSTED BASIS FOR DETERMINING GAIN OR LOSS. "(a) Basis (Unadjusted) of Property. - The basis of property shall be the cost of such property; except that - * * *
"(2) Gifts after December 31, 1920. - If the property was acquired by gift after December 31, 1920, the basis shall be the same as it would be in the hands of the donor or the last preceding owner by whom it was not acquired by gift, except that if such basis (adjusted for the period prior to the date of the gift as provided in subsection (b)) is greater than the fair market value of the property at the time of the gift, then for the purpose of determining loss the basis shall be such fair market value. If the facts necessary to determine the basis in the hands of the donor or the last preceding owner are unknown to the donee, the Commissioner shall, if possible, obtain such facts from such donor or last preceding owner, or any other person cognizant thereof. If the Commissioner finds it impossible to obtain such facts, the basis *188 in the hands of such donor or last preceding owner shall be the fair market value of such property as found by the Commissioner as of the date or approximate date at which, according to the best information that the Commissioner is able to obtain, such property was acquired by such donor or last preceding owner." * * *
Respondent's position on this issue is that irrespective of the fair market value of the jewelry at the time of the theft no deduction can be allowed petitioners for the three items that we have determined were lost by theft because no evidence whatsoever was presented as to the original cost of the jewelry. The statutory provisions on which the petitioners rely sustain the respondent's position. The Supreme Court has held cost to be the maximum applicable basis of recovery in losses of this type. Helvering v. Owens, 305 U.S. 468. We must agree with the respondent. From the record we are unable to determine the manner in which the petitioners acquired the property, nor is there any evidence to support a finding of a cost, market value or other basis. True, the petitioners' income tax return for the year in question describes two of the items determined *189 to have been lost as acquired by gift, and the third as acquired by purchase. However, aside from these indirect and self-servicing statements, the record is devoid of evidence which would establish either the mode of acquisition or the cost basis of the items in question. The requirement to prove cost is an essential element of the petitioners' case. If, in fact, two of the items lost by theft were acquired by Ruth originally as a gift section 113 (a) (2) requires that she prove not only the cost of the items in the hands of her donor or the last preceding owner by whom it was not acquired by gift but, in addition, she must also prove the fair market value of the property at the time of the gift. Deductions are permitted by statutory grace and the burden is upon the claimant to establish his right under the statute. This the petitioners have failed to do. A recent application of the principle that cost is an essential element in a case of this kind was made in Eric H. Heckett, 8 T.C. 841, 847, wherein it was stated: "The rule applicable to casualty losses under section 23 (e) (3) is that the deduction for the loss may not exceed costs, and, in the case of depreciable *190 nonbusiness property, may not exceed the value immediately before the casualty. Helvering v. Owens, 305 U.S. 468. * * *" Petitioners completely failed to offer any proof as to this necessary element of their case. They have not sustained the burden of proof required under the statutory provisions on which they base their right to recovery. Petitioners seek to deduct as ordinary and necessary business expenses the sum of $1,875, claimed by them to have been spent in the entertaining of customers in connection with decedent's business of customers' representative. Decedent brought to his employer between four and five million dollars worth of business. His only compensation for this contribution to his employer's business was commissions in the amount of $21,275. The business of securities' salesman is highly competitive. For this we have the testimony of John F. Power, an expert in the field and a partner of the firm of Eastman, Dillon & Company, who had been a customers' representative himself. His evidence supports our conclusion that it was business necessity for a person in decedent's line of business to entertain his customers. One block of United States Steel *191 shares has little to distinguish it from a like block of shares presented by another salesman. A customers' representative's chief tool in trade is his following of satisfied customers. In order to retain these customers decedent was forced to incur expenses for their entertainment. This the respondent does not contest. However, he reasons that since decedent had been in the business for 22 years and there was testimony to show that many of his customers were also his friends, the entertainment done by the petitioners was primarily social rather than business in nature. To bring an expenditure within the purview of section 23 (a) (1) of the Internal Revenue Code, it is necessary for the taxpayer to show that such expenditures had a direct relation to the conduct of his business and that the business was expected to benefit therefrom. Such proof has been presented. The petitioners have maintained their burden of proof in this regard. However, we can not accept the petitioners' figure of $1,875. It is noted that this figure includes several highly questionable items. For example, the petitioners lived in a comfortable three-room apartment, which they testified *192 was satisfactory for their purposes. They moved to "a better address", which brought about a $500 increase in annual rental. This differential they seek to deduct as a part of their entertainment expenses on the grounds that it was necessary for them to live at a fashionable address in order to properly entertain their wealthy customers. We find, however, that the item of expense was personal and nondeductible for it falls within the prohibition of section 24 (a) (1). Under these circumstances, we can only make an approximation of the deductible expenses. We have, therefore, found that the petitioners may deduct the sum of $800 as ordinary and necessary business expenses incurred in the entertainment of decedent's customers. See Cohan v. Commissioner, 39 Fed. (2d) 540, 543. With respect to the respondent's disallowance of that part of petitioner's claimed deduction for the payment of taxes amounting to $85, we have found as a fact that this sum represents amounts paid for Federal excise taxes. Such taxes are not deductible for income tax purposes. Sections 23 (c) (1) (F) and 1700 (a) (1) (2). Decision will be entered under Rule 50.