ANDREW P. SOLT, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 27163.   Promulgated November 10, 1952.

*Mitchell Aaronson, Esq.*, and *Jacob Shearer, Esq.*, for the petitioner. *William P. Flynn, Jr., Esq.*, for the respondent.

OPINION.

RAUM, *Judge:* Petitioner's claim to the deduction in controversy rests upon the following chain of reasoning: (1) that his one-sixth interest in the farm was deemed to have been destroyed or seized, pursuant to section 127 (a) (2)[1] of the Internal Revenue Code, on June 5, 1942, when the United States declared war on Hungary; (2) that he recovered that interest on January 20, 1945, or, alternatively, on February 22, 1945, within the meaning of section 127 (c) ;[2] and

---

[1] SEC. 127. WAR LOSSES.

    (a) CASES IN WHICH LOSS DEEMED SUSTAINED, AND TIME DEEMED SUSTAINED.—For the purposes of this chapter—

        \*        \*        \*        \*        \*        \*        \*

        (2) PROPERTY IN ENEMY COUNTRIES.—Property within any country at war with the United States, or within an area under the control of any such country on the date war with such country was declared by the United States, shall be deemed to have been destroyed or seized on the date war with such country was declared by the United States.

        \*        \*        \*        \*        \*        \*        \*

[2] SEC. 127. WAR LOSSES.

    (c) RECOVERIES

        (1) GENERAL RULE.—Upon the recovery in the taxable year of any money or property in respect of property considered under subsection (a) as destroyed or seized in any prior taxable year, the amount of such recovery shall be included in gross income to the extent provided in paragraph (2), unless the provisions of paragraph (3) are applicable to the taxable year pursuant to an election made by the taxpayer under the provisions of paragraph (5).

        (2) INCLUSION IN GROSS INCOME.—

            (A) Amount of Recovery.—The amount of the recovery of any money or property in respect of property considered under subsection (a) as destroyed or seized in any prior taxable year shall be an amount equal to the aggregate of

(3) that he again suffered a loss of that interest on March 15, 1945, as a result of confiscation by the Provisional National Government of Hungary, deductible under section 23 (e). The Commissioner does not deny that petitioner is entitled to a deduction if he can bring himself within the terms of these various statutory provisions.

such money and the fair market value of such property, determined as of the date of the recovery.

(B) Amount of Gain Includible.—To the extent that the amount of the recovery plus the aggregate of the amounts of previous such recoveries do not exceed that part of the aggregate of the allowable deductions in prior taxable years on account of the destruction or seizure of property described in subsection (a) which did not result in a reduction of any tax of the taxpayer under this chapter or chapter 2, such amount shall not be includible in gross income and shall not be deemed gain upon the involuntary conversion of property as a result of its destruction or seizure. To the extent that such amount plus the aggregate of the amounts of previous such recoveries exceed that part of the aggregate of such deductions, which did not result in a reduction of any tax of the taxpayer under this chapter or chapter 2 and do not exceed that part of the aggregate of such deductions which did result in a reduction of any tax of the taxpayer under this chapter or chapter 2, such amount shall be included in gross income but shall not be deemed a gain upon the involuntary conversion of property as a result of its destruction or seizure. * * * For the purposes of this paragraph an allowable deduction for any taxable year on account of the destruction or seizure of property described in subsection (a) shall, to the extent not allowed in computing the tax of the taxpayer for such taxable year, be considered an allowable deduction which did not result in a reduction of any tax for the taxpayer under this chapter or chapter 2.

(3) TAX ADJUSTMENT MEASURED BY PRIOR BENEFITS.—If the provisions of this paragraph are applicable to the taxable year pursuant to an election made by the taxpayer under the provisions of paragraph (5)—

(A) Amount of Recovery.—The amount of recovery in the taxable year of any money or property in respect of property considered under subsection (a) as destroyed or seized in any prior taxable year shall be an amount equal to the aggregate of such money and the fair market value of such property, determined as of the date of the recovery. For the purpose of this paragraph, in the case of the recovery of the same property or interest considered under subsection (a) as destroyed or seized, the fair market value of such property or interest shall, at the option of the taxpayer, be considered an amount equal to the adjusted basis (for determining loss) of such property or interest in the hands of the taxpayer on the date such property or interest was considered under subsection (a) as destroyed or seized. * * *

(B) Adjustment for Prior Tax Benefits.—That part of the amount of the recovery, in respect of any property considered under subsection (a) as destroyed or seized, which is not in excess of the allowable deductions in prior taxable years on account of such destruction or seizure of the property (the amount of such allowable deductions being first reduced by the aggregate amount of any prior recoveries in respect of the same property) shall be excluded from gross income for the taxable year of the recovery for the purpose of computing the tax under this chapter and chapter 2; but there shall be added to, and assessed and collected as a part of, the tax under this chapter for the taxable year of the recovery the total increase in the tax under this chapter and ·chapter 2 for all taxable years which would result by decreasing, in an amount equal to such part of the recovery so excluded, such deductions allowable in the prior taxable years with respect to the destruction or seizure of the property. Such increase in the tax for each such year so resulting shall be computed in accordance with regulations prescribed by the Secretary. * * *

* * * * * * *

(5) ELECTION BY TAXPAYER FOR APPLICATION OF PARAGRAPH (3).—If the taxpayer elects to have the provisions of paragraph (3) applicable to any taxable year in which he recovered any money or property in respect of property considered under subsection (a) as destroyed or seized, the provisions of paragraph (3) shall be applicable to all taxable years of the taxpayer beginning after December 31, 1941, and such election, once made, shall be irrevocable. * * *

We have found that petitioner did acquire a one-sixth interest in the farm at the death of his mother, and that he never disposed of that interest. Accordingly, he did suffer a war loss pursuant to section 127 (a) (2) in 1942 when war was declared between the United States and Hungary. We are not persuaded by respondent's contention "that the property was lost or became worthless prior to this time," thereby making *Ernest Adler*, 8 T. C. 726, applicable here. Rather, we are satisfied on this record that the farm could not be regarded as lost or worthless prior to June 5, 1942, and that in this respect this case is governed by *David Schnur*, 10 T. C. 208, 216; *Benjamin Abraham*, 9 T. C. 222, 225–227; and *Eric H. Heckett*, 8 T. C. 841 (first issue).

It becomes necessary to determine, therefore, whether petitioner thereafter recovered his property interest. He contends that recovery took place either on January 20, 1945, the date that the armistice between Hungary and the United States was signed, or, in any event, on February 22, 1945, when petitioner's brother George went to the farm. We agree with respondent that the mere execution of the armistice agreement cannot be regarded as restoring petitioner's property to him. Cf. *Ervin Kenmore*, 18 T. C. 754. However, we are convinced by the evidence that petitioner's brother visited the farm in February and early March of 1945, and that, acting on behalf of himself and his co-owners, actually re-took possession and control of the farm. There was here a recovery within the meaning of section 127 (c). Moreover, we are also convinced that the property thus recovered was confiscated shortly thereafter by the Provisional National Government of Hungary, on March 15, 1945, and that petitioner is entitled to a deduction under section 23 (e), measured by the adjusted basis of his interest in the property.

We come then to the question of petitioner's adjusted basis. Since petitioner has made an election under section 127 (c) (5) to come within the provisions of section 127 (c) (3), we must look to section 127 (d) (2) for our first guide to petitioner's basis. Section 127 (d) (2) provides:

> (d) BASIS OF RECOVERED PROPERTY.—
>
>    \*       \*       \*       \*       \*       \*       \*
>
>    (2) PROPERTY RECOVERED IN TAXABLE YEAR TO WHICH SUBSECTION (c) (3) IS APPLICABLE.—In the case of a taxpayer who has made an election under the provisions of subsection (c) (5), the basis of property recovered shall be an amount equal to the value at which such property is included in the amount of the recovery under subsection (c) (3) (A) \* \* \*

Section 127 (c) (3) (A), made applicable by the provisions just quoted, provides:

(A) Amount of Recovery.— * * * For the purpose of this paragraph, in the case of the recovery of the same property or interest considered under subsection (a) as destroyed or seized, the fair market value of such property or interest shall, at the option of the taxpayer, be considered an amount equal to the adjusted basis (for determining loss) of such property or interest in the hands of the taxpayer on the date such property or interest was considered under subsection (a) as destroyed or seized. * * *

Petitioner relies upon these provisions, and there is no dispute between the parties, assuming a deduction to be allowable, that petitioner is entitled to use the adjusted basis of his property interest as of June 5, 1942. What was his adjusted basis at that time? Petitioner had acquired his interest by inheritance from his mother on November 25, 1934, and his unadjusted basis, pursuant to section 113 (a) (5), was the value of his one-sixth interest in the farm at the time of acquisition in 1934. His adjusted basis as of June 5, 1942, can then be determined by making appropriate adjustments to that value for any capital additions, depreciation sustained, or other factors or events similarly relating to the property, which are set forth in section 113 (b) and which occurred between November 25, 1934, and June 5, 1942.

Petitioner contends that the adjusted basis of his one-sixth interest as of June 5, 1942, was not less than $30,000, and this in turn is predicated upon his own testimony placing a value upon the entire farm as of November 25, 1934, equivalent to somewhat in excess of $180,000. We heard that testimony, and have reexamined it with care, but we do not have any confidence in it. Petitioner obviously knew very little about values; his testimony plainly would not have been admissible at all, but for the rule that an owner of property may testify as to its value. Petitioner did not even understand what was meant by "value" when he gave his testimony. In the circumstances, we are without any reliable guides for determining petitioner's basis. The burden was on him, and he has failed to meet it. Yet, we are satisfied on this record that he in fact did sustain a loss, and that there was in fact some adjusted basis as of June 5, 1942. In the circumstances, we cannot deny him relief altogether, cf. *Helvering* v. *Taylor*, 293 U. S. 507, and it is incumbent upon us to do the best we can with the materials at hand. As the Court of Appeals for the Second Circuit said in *Cohan* v. *Commissioner*, 39 F. 2d 540, 544:

* * * the Board should make as close an approximation as it can, bearing heavily if it chooses upon the taxpayer whose inexactitude is of his own making.

Cf. *Benjamin Abrahams*, 9 T. C. 222, 226–227. The valuation claimed by petitioner appears highly excessive to us. Taking the entire record into account and doing our best with such meager materials as

appear in the record, it is our best judgment and we have so found as a fact that the value of petitioner's one-sixth interest in the farm at the date of his mother's death, as adjusted to June 5, 1942, in accordance with section 113 (b), was $7,500. That was his adjusted basis, and it is that amount which he is entitled to deduct in 1945.

*Decision will be entered under Rule 50.*