Vincent Treanor v. Commissioner.
Treanor v. Commissioner
Docket No. 23142.
United States Tax Court
1951 Tax Ct. Memo LEXIS 267; 10 T.C.M. (CCH) 336; T.C.M. (RIA) 51100; April 6, 1951
*267 Upon the evidence, held: 1. Petitioner is entitled to deduct from gross income his losses sustained in certain farm operations entered into for a profit. 2. Petitioner's family lived in Andover, Massachusetts, but under section 23 (a) (1) (A) his "home" place of employment was in Westbury, New York, and his meals and lodgings at Westbury are not deductible. 3. Petitioner allowed a deduction for travel expenses between principal place of employment in New York ("home") and place of business in Massachusetts. 4. In 1946, petitioner was employed for short periods of time as pari-mutuel manager at another race track than the one where he regularly worked. To reach this place of employment he traveled by automobile and returned each day. Held, petitioner entitled to deduct travel expenses for these trips. 5. Petitioner entitled to a deduction for entertainment expense connected with his business and where not reimbursed by his employer. 6. Petitioner not entitled to deductions which were not properly presented to the Court by pleadings. 7. Petitioner not entitled to deduction for entertainment of subordinate employees since he was to be reimbursed by employer in subsequent *268 year. 8. Petitioner not entitled to a deduction for cash shortages of employee or travel expenses for which petitioner was reimbursed in subsequent year. 9. Petitioner was not entitled to a deduction for travel and other expenses he paid for on behalf of employer from whom petitioner expected reimbursement in subsequent year. 10. Petitioner not entitled to a deduction for advances made to a newly-formed corporation since it was not established that the claim against the corporation became worthless during the taxable year. 11. Petitioner allowed a deduction for expenses sustained in connection with an option which expired during the taxable year. 12. Petitioner entitled to a deductior for casualty loss by fire, limited to the unrecovered cost of depreciable assets destroyed and deduction denied for items having been expensed in petitioner's farm operations. 13. Petitioner not entitled to a deduction for certain Federal excise taxes paid in 1945 and 1946 by petitioner, section 23 (c) (1) (F), I.R.C.
14. Petitioner is entitled to deductions in 1945 and 1946 for telephone expenses incurred in his business. James P. Cassidy, Esq., for the petitioner. James R. McGowan, Esq., for the respondent. BLACK Memorandum Findings of Fact and Opinion BLACK, Judge: The Commissioner has determined deficiencies in petitioner's income tax for the calendar years 1945 and 1946 of $448.62 and $1,654.25, respectively. Copy of the deficiency notice is not attached to the petition or to the amended petition and no copy of the deficiency notice was offered in evidence at the hearing. Therefore, we have to look to the pleadings to ascertain what adjustments are in issue in *270 this proceeding without the aid of the deficiency notice to explain them. There is no dispute as to the aggregate amount of gross income during the taxable years. Certain deductions claimed by petitioner on his 1945 and 1946 income tax returns were disallowed by the Commissioner and a deficiency in income tax was determined against petitioner. Petitioner by appropriate assignments of error protests the disallowance of deductions as determined by respondent. Subsequently petitioner, in an amendment to his petition, claimed certain deductions in addition to those claimed on his income tax returns. Thereafter, in respondent's answer the Commissioner alleged petitioner was not entitled to certain other deductions claimed on petitioner's tax returns. In the interest of clarity and brevity we set forth the issues, make our findings of fact, and render our opinion as to each issue separately. General facts. - Petitioner purchased a 65-acre farm at Andover, Massachusetts, on June 8, 1939. Beginning in October 1939, petitioner occupied a dwelling on the farm with his family. During the taxable years petitioner continued to live there with his wife and two dependent children. Petitioner *271 voted in Andover, paid his state and local taxes there, and sent his children to school in Andover. Petitioner called his place the "Hobby Horse Farm." Petitioner has been connected with horse racing and race tracks since he was a child. In addition to operating a horse farm during the taxable years, petitioner was employed as manager of parimutuel departments of race tracks. The individual income tax returns of the petitioner for the years 1945 and 1946 were prepared on a cash basis and filed with the Collector of Internal Revenue for the District of Massachusetts. Petitioner's wife received no income during the taxable years 1945 and 1946, and did not file separate income tax returns. Issue 1. - The question presented under this issue is whether the petitioner may deduct from gross income his losses incurred in the operation of his farm during the years 1945 and 1946. Petitioner spent only a part of his time at the farm in each of the taxable years; his principal business was elsewhere. His family resided on the farm throughout both years. The farm was purchased with the idea of raising race horses. Considerable sums of money were expended in the construction of barns and adapting *272 the soil to the raising of feed for horses. When the farm was acquired, petitioner entered into an oral agreement with a Mr. Neil whereby they were to purchase brood mares, raise their foals on the farm, and later race the foals. It was also agreed that from time to time they would purchase race horses. Their arrangement between themselves as to expenses was that petitioner should pay all the expenses of maintaining the farm, feeding the stock on the farm, and that Neil should take care of the expenses at the race track (trainer's fees, cost of transportation, cost of the track, charges of exercise boys, etc.). It was further understood that receipts from sale of horses and from purses would first be applied to reimbursement of Neil. After Neil was repaid in full, petitioner was to be reimbursed for farm expenses and any additional receipts were to be shared equally. The receipts from the business were never sufficient to reimburse Neil, and petitioner was never entitled to any reimbursement. In accordance with the agreement, the expenses of operating the farm itself for the years 1945 and 1946 were paid by petitioner. Two brood mares were purchased and each delivered two foals before *273 the taxable years herein. Two other horses were also purchased for racing. A total of six horses were kept on petitioner's farm. Only one of the race horses proved a success. It was one of their foals, Dancing Gob, which was sold by Hobby Horse Farm after its third race and the proceeds from the sale were used to reimburse Neil for a part of his expenses. In addition to management of the farm, petitioner performed a portion of the manual labor in connection with crop care and care of horses during the years 1945 and 1946. During 1945, it was generally thought that race tracks would be forced to close by reason of the existence of the war. Petitioner was worried about Hobby Horse Farm which, at the time, was devoted only to raising and racing horses. Petitioner decided to raise some chickens and more than 1,000 baby chicks were purchased and were to be raised in hope of making a profit. Petitioner failed to keep adequate and complete books of account and kept no records on racing entries. Petitioner submitted as an exhibit two sheets of accounting paper purporting to represent his farm records and on which entries had been made in chronological order. The entries consisted of filling *274 in three tabular columns: (1) date, (2) description of expenditure, and (3) amount. In addition petitioner submitted some receipts and testified as to the amounts of other farm expenses from which we have determined the losses sustained in operation of Hobby Horse Farm. Petitioner sustained a net loss in the operation of his farm during both taxable years, and apparently for every year since 1939. In determining whether a taxpayer enters into the operation of a farm for the purpose of making a profit, his intention is the controlling factor. [1] If a taxpayer continues to farm year after year despite recurring losses, it is a strong indication that the taxpayer is farming for his own pleasure and recreation. Apparently in 1946 the petitioner became convinced of the remoteness of a profit from the operation of his race horse farm. By raising chickens petitioner hoped to recoup some of his losses incurred in horse raising and racing. Finally, in 1947 petitioner abandoned the business enterprise of operating a race horse farm. *275 Considering all the evidence submitted before this Court, we hold that petitioner has sustained the burden of proof and that he "carried on this enterprise" with "the hope of * * * making it profitable" and not "for gratification of a personal whim" [2] or other personal reasons. It is necessary also for us to determine the amounts of the farm loss sustained by petitioner in the years 1945 and 1946. In making these determinations a reasonable deduction has been allowed for the petitioner's expense of wages and meals for a farm hand, but a deduction has not been allowed for the value of the room provided a farm worker who lived in petitioner's personal residence. The farm worker resided in petitioner's personal residence for petitioner's convenience and we do not find that petitioner is entitled to any deduction for the rental value of the room. Petitioner claimed a farm loss of $496.32 on his 1945 tax return and claimed additional deductions in his amended petition. After allowing depreciation *276 of $488.40 on fixed assets used in the farming operation and $50 on a brood mare, it is determined that the farm loss sustained by petitioner in the year 1945 was $786.32. Petitioner claimed a farm loss of $2,288.77 on his 1946 tax return and additional deductions have been claimed and properly alleged before this Court. It is determined that petitioner sustained a loss in operating his farm for the year 1946 in the amount of $2,918.16, after allowing depreciation in the same amount as determined reasonable for 1945, and after prorating premiums on property insurance policies paid for in 1946 and having a term of life in excess of one year. Issue 2. - The question here is whether petitoner may deduct from his gross income the amounts which he paid for meals and lodging while at Westbury, New York. Petitioner testified that his services were required there by his employer for 120 working days in the year 1945, and 144 working days in 1946. Almost all of the remaining days in the year 1945 petitioner was at his farm in Andover, Massachusetts. Likewise, in 1946, petitioner divided his time between Westbury and Andover, except for the time he spent in Ohio for his employer there. Petitioner's *277 family resided at Andover, Massachusetts, during 1945 and 1946 while he worked at Roosevelt Raceway at Westbury on Long Island as manager of the race track. During the taxable years in question petitioner reported income as follows (exclusive of farm loss and deductions claimed): Source of Income
Year - 1945
Year - 1946
Salary at Westbury,
N. Y.
$10,725.00
$15,350.79
Salary at Goshen,
N. Y.
520.00
Dividends
775.00
2,090.00
Other Income
2,591.26
During the years previous to 1945, petitioner was usually employed at several different race tracks during the course of a year. Generally, each race track had a racing season of 30 days, more or less, and at the close of the season at one track petitioner would accept employment with a race track situated in a different locality. Petitioner's association with Roosevelt Raceway in Westbury began in 1940, this being one of the tracks at which he was employed during that year. In 1942, petitioner entered into a three-year contract to act as pari-mutuel manager for race track meetings being held at Roosevelt Raceway. In 1945 and 1946, consecutive meets were held at this race track from May 15 to November 15 *278 with only Sundays intervening. During the taxable years 1945 and 1946, petitioner was not employed at a large number of race tracks as was the case in prior years. In prior years apparently petitioner was a taxpayer required to be at many different places for short, indefinite periods while away from home in pursuit of his trade or business. [3] But during the taxable years herein, the nature of petitioner's employment was quite different.
Consideration has been given to the geographical source of petitioner's income during the taxable years and to the other facts presented, and we conclude that S.M.R. O'Hara, 6 T.C. 841 is controlling. In the instant case petitioner has cited Harry F. Schurer, 3 T.C. 544 and similar cases. For the reasons stated in Beatrice H. Albert, 13 T.C. 129, and set forth on page 131, we hold the Schurer case is not controlling. We have before us a fact situation not unlike those presented in Beatrice H. Albert, supra; Robert F. Green, 12 T.C. 656, and S.M.R. O'Hara, supra. *279 In Joseph H. Sherman, Jr., 16 T.C. 332, promulgated February 15, 1951, the taxpayer and his family lived in Massachusetts and he was employed at about $4,000 per year, while, at the same time, he had a place of business in New York City where he earned about $8,300 during the taxable year. Upon the facts we held the taxpayer was entitled to deduct his entire travel expense while away from Worcester, Massachusetts, which was his "home" under the provisions of section 23 (a) (1) (A) of the Code. In the instant case we find the petitioner's principal place of employment to be Westbury, New York. That was where he earned most of his income. Even though we have held that petitioner's farming operations at Andover were a business carried on for profit, his food and lodging expenses while at Westbury are not deductible for the reason that they were incurred at his principal post of duty. Ney v. United States, 171 Fed. (2d) 449. Petitioner is not entitled to the deductions claimed in the amounts of $840 on his 1945 tax return, and $1,000 on his 1946 tax return. These deductions were described in the 1945 return as, "120 days at 7.00 (working days only included), *280 $840.00" and in the 1946 return as, "(3) In N. Y. - Westbury, L.I., May 15 to Nov. 5, inclusive, 144 racing days only, at 7.00 = $1,008." Issue 3. - The question here is whether petitioner is entitled to a deduction for travel between Westbury, New York, and Andover, Massachusetts. In Issue 2 of this opinion, we determined that petitioner's "home" or principal place of employment was at Westbury. Petitioner's family resided at Andover where petitioner was also engaged in operating a farm as a business for profit (determined in Issue 1). A taxpayer may deduct his traveling expenses "while away from home in the pursuit of a trade or business." Petitioner is entitled, therefore, to a deduction for travel expenses between his "home" and his "place of business" in the amounts claimed on his tax returns for the years 1945 and 1946. See Joseph H. Sherman, Jr., supra.
Issue 4. - The question here is whether petitioner is entitled to a deduction for travel expense between Westbury, New York, and Goshen, New York, during the years 1945 and 1946. Tracks were located in each city and petitioner stated that he rendered services at both places during both years. Petitioner received *281 no income during the year 1945 for services rendered at the race track at Goshen. Since petitioner was neither an employee nor engaged in a trade or business at Goshen in 1945, these expenses are not deductible under sections 22 (n) (2) or 23 (a) (1) (A). In the year 1946, however, petitioner received a salary of $520 for his part-time services rendered to the race track at Goshen. He has claimed in his amended petition a deduction for travel between petitioner's place of employment in Westbury and Goshen. Petitioner testified that during the taxable year he made 10 or 11 trips to Goshen from Westbury. Apparently the petitioner's job in Goshen did not require that he spend the night there; he would go up and return each day. The petitioner testified that the distance was 85 miles each way, which would make 170 miles for the round trip. At five cents a mile, this would be $8.50 for each trip and based on 10 trips petitioner's cost of transportation was $85. Inasmuch as petitioner had to do this travel from his principal post of duty at Westbury and that it was travel which resulted in earning income elsewhere than his regular post of duty, we think this $85 should be allowed as a deductible *282 business expense and we so hold. Issue 5. - The question here is whether petitioner may deduct from his salary as race track manager his entertainment expenses paid during the year 1946, for which petitioner was not reimbursed by his employer. Petitioner submitted as an exhibit to the Court receipts which purported to substantiate his travel, meals, and lodging claimed for the year 1946. We have examined these receipts and it is apparent that $534 was spent by petitioner for entertainment while at his post of duty in Westbury. Petitioner was a pari-mutuel manager and as a matter of business entertained certain business guests and officials connected with the race track meets. In view of the duties of petitioner as pari-mutuel manager, these expenditures do not appear to be personal in nature. [4] Following Benjamin Abraham, 9 T.C. 222, we hold that petitioner is entitled to a deduction in 1946 of $534 for entertainment expense as provided for under section 23 (a) (1) (A) of the Code. Issue 6. - The question here is whether petitioner is entitled to a deduction for $360 spent by petitioner *283 during 1946 for a box used by petitioner's business guests at Westbury race track. Petitioner claimed no deduction on his income tax return for this expense, nor did he claim this deduction in his original or amended petitions. At the hearing petitioner testified that he had paid this expense but he made no motion at that time or subsequently to amend his petition. Since the issue has not been properly presented before this Court, we cannot consider the merits of petitioner's contentions. [5]
Issue 7. - The question here is whether petitioner is entitled to deduct from gross income the amount *284 he expended for a banquet given for subordinate employees. For this expenditure petitioner claimed a deduction of $197.75 on his tax return for the year 1946. Petitioner testified that he expected to be reimbursed by his employer and, in fact, he was reimbursed therefor in 1947 by his employer. Petitioner is not entitled to this deduction of $197.75 claimed in the year 1946. Glendinning, McLeish & Co. v. Commissioner, 24 B.T.A. 518, affirmed 61 Fed. (2d) 950, 952. Issue 8. - The question here is whether petitioner may deduct from gross income the amounts paid by petitioner to make up shortgages in employees' accounts at the end of the 1946 racing season. Petitioner claimed a deduction of $136.75 on his 1946 tax return, describing the amounts as "collectible." Petitioner expected to be reimbursed in 1947 in full. It appears to us that the payment of the cash shortages was no more than an advance or loan, and that petitioner held a claim at the end of the taxable year against the various employees. The amount of an advance may not be a deduction from gross income but may be deducted under section 23 (k) of the Code only after the loan has become worthless. *285 There is no evidence that this claim was worthless in 1946 and petitioner is not entitled to this deduction of $136.75 claimed on his 1946 tax return. Issue 9. - The question here is whether petitioner is entitled to a deduction in 1946 for certain expenses incurred by petitioner and for which he had a contract for reimbursement. On his 1946 income tax return petitioner claimed $599.50 for travel expenses to Toledo, Ohio, and $471.10 for certain other items purchased for his employer. It has been determined that petitioner's "home" was in Westbury (see Issue 2). Petitioner made these trips to Toledo, where he was employed at the Fort Miami Raceway. Since petitioner received reimbursement in a subsequent year for these deductions, the tax effect of petitioner's disbursement was to make an advance to his employer, and not the payment of an expense. Glendinning, McLeish & Co. v. Commissioner, supra.An advance or loan per se has no effect on a taxpayer's taxable income until it becomes worthless, is settled, exchanged, or sold. On the basis of the facts presented we must hold that the petitioner is not entitled to either of these deductions. Issue 10. - The question *286 here is whether petitioner is entitled to a deduction from gross income for certain expenditures incurred in the organization of a corporation. Petitioner included in his expense deductions on his 1946 income tax return the sum of $532.50 which he alleged was expended in connection with the organization of a new corporation. Petitioner in his income tax return for 1946 listed these alleged expenses as follows: (2) Nov. 5 to 14, inc. by car
N. Y. to Harrisburg, Pa.
to Troy, Ohio
1400 miles at.05
$ 70.00
to Baltimore, Md.
10 days at $7
70.00
to N. Y., N. Y.
to Andover, Mass.
(4) Dec. 6 Andover to N. Y.
to Baltimore, Md.
to Toledo, Ohio
1820 miles
91.00
to Cleveland, Ohio
9 days
63.00
to N. Y.
to Andover
Jan. to Apr. Expenses attached to forming new corporation for night Harness Racing in Mass.
10 trips Andover to Boston
13.00
1 large dinner to State Senators * * *
105.50
6 business dinners at $20 - est.
120.00
Petitioner has claimed in his amended petition an additional deduction of $600 which was paid to the State of Massachusetts for the corporate charter. Petitioner and certain other "prospective investors" formed *287 a Massachusetts corporation, the New England Exposition Company, for the purpose of buying a race track in Massachusetts or Ohio. In return for petitioner's money spent in organizing the corporation and investigating the possibility of acquiring a race track, he expected to receive promotional stock. These expenses paid by petitioner were not his own ordinary and necessary business expenses but were advances to the corporation out of his own pocket. Upon receipt of shares of promotional stock, petitioner's basis for the capital asset would be the amount expended by him in promoting the company. Petitioner testified that during the month of December 1946, efforts were still being made for the corporation to purchase a race track in Ohio. There was no evidence presented before this Court that the corporation had become worthless or was abandoned in the year 1946. We hold, therefore, that petitioner is not entitled to a deduction in 1946 for $600 paid for the corporate charter or for the amount of $532.50 claimed as travel and other expense on his tax return in connection with this proposed corporation. It seems clear from the evidence that the corporation in question had not, in 1946, *288 commenced the carrying on of the business for which it was organized and that petitioner's loss in the venture, if deductible, would be deductible in a year subsequent to the year 1946 which we have before us. Issue 11. - The question here is whether petitioner is entitled to a deduction for travel expenses incurred by him in an unsuccessful attempt to purchase a race track. Early in 1946, petitioner secured an option to purchase a race track but the option expired before he could secure the financial backing of investors. Respondent, by an amendment to his answer, questioned the deductibility of these travel expenses but at the hearing conceded that such travel expenses as are attributable to petitioner's attempt to exercise the option may be deducted from petitioner's gross income, section 23 (a) (2) of the Code. Here we can see that the petitioner paid travel expenses in attempting to purchase a race track on his own behalf with the option expiring during the year 1946, while in Issue 9 the petitioner paid travel expenses while attempting to acquire property for a corporation from whom petitioner was expecting reimbursement. Petitioner is here entitled to a deduction of $612.62 *289 in the year 1946, which is the amount claimed on his return. Issue 12. - The question here is whether petitioner is entitled to the following deductions claimed on his 1946 income tax return and arising from a fire on petitioner's farm: Brooder
$ 125
Alfalfa
250
Chickens
750
$1,125
Petitioner operated his farm on a cash basis without using inventories. The alfalfa destroyed in the fire had been grown on petitioner's farm. The costs of producing the alfalfa - seed, labor, maintenance, and depreciation of equipment - were claimed as expenses elsewhere on petitioner's return. Petitioner had not included in income the value of the alfalfa grown on his farm. Petitioner claimed also a deduction for his chickens destroyed in the fire. Like the alfalfa, petitioner had deducted the cost of acquiring and raising the chickens as a farm expense. Where a taxpayer has made an expenditure, he is entitled to only one deduction. [6] Petitioner is not entitled, therefore, to a casualty loss deduction arising from destruction of the chickens by fire or for the alfalfa destroyed by fire. *290 In his testimony, petitioner itemized the depreciable assets destroyed in 1946 by fire. Including the cost of the brooder, it is determined that the total unrecovered cost of depreciable assets destroyed by fire in 1946 was $245, and petitioner is entitled to a deduction of this amount as provided by section 23 (e) of the Code. It is also determined from the evidence that petitioner was not reimbursed by insurance for any of the capital items which total $245. Petitioner's casualty loss deduction arising from the fire is $245, in lieu of $1,125 claimed on his 1946 tax return. We do not understand that petitioner claims any greater loss from the fire than the above-mentioned $245 if we should hold in his favor on the farm loss issue. Issue 13. - Petitioner claimed as deductions on his income tax returns Federal excise taxes paid on telephone calls, telegrams, and amusements amounting to $75.24 in the year 1945, and $150.31 in the year 1946. Also petitioner claimed as a deduction water taxes of $10.54 in the year 1945, such deduction being disallowed in the Commissioner's deficiency notice. Since no proof was offered by petitioner as to the water taxes, we must assume this expenditure *291 is of the type falling within section 24 (1) of the Code and is, therefore, nondeductible. The other taxes claimed by petitioner as deductions come within the purview of section 23 (c) (1) (F) of the Code and are nondeductible. Issue 14. - The question here is whether petitioner is entitled to deduct telephone expenses paid during the years 1945 and 1946. Petitioner claimed no deduction for telephone expense on his 1945 tax return, but he claimed on his 1946 return the amount of $55.73. This item was listed as a deduction on the return as follows: "(5) Business phone calls, exclusive of Tax and telegrams $55.73." Respondent states in his answer that no disallowance of telephone expenses was made in the Commissioner's deficiency notice and the issue as to the deductibility of this $55.73 was first raised in respondent's answer. By an appropriate amendment to his pleadings petitioner claims deductions for telephone expenses paid in the amounts of $122.72 for the year 1945, and $96.93 for the year 1946. At the hearing petitioner testified as follows with reference to telephone expense deductions as asked for in his amended petition: "Q. Mr. Treanor, did you have certain telephone *292 and toll calls in connection with your business at your various enterprises in 1945 and '46? "A. I did. "Q. Now have you examined those vouchers from the Telephone Company, and picked out the ones which pertain to toll calls in connection with your business? "A. I have. "Q. And is the total for the year 1945, $122.72? "A. That is correct. "Q. And are these calls all included within the vouchers? "A. They are all recorded. "Q. Did you examine your telephone toll charges for 1946, and pick out the items for telephone toll charges that pertained to your business? "A. Yes, sir. "Q. And did they total $96.93 for charges and tax? "A. Yes, sir." On the strength of the foregoing testimony we find that petitioner expended in 1945, $122.72 for telephone calls in connection with his business and $96.93 in 1946 for telephone calls in connection with his business. Respondent offered no evidence to the contrary. We, therefore, hold that in a computation under Rule 50, petitioner should be allowed a deduction in 1945 of $122.72 and in 1946 of $96.93 as expenses for telephone calls incurred in his business. This latter amount of $96.93 for 1946 is not in addition to the $55.73 *293 which petitioner deducted in his return for telephone expenses, but includes it. Respondent's affirmative allegation that he erred in allowing petitioner a deduction in 1946 of $55.73 for telephone expenses is not sustained. The burden of proof was on respondent to sustain his affirmative allegation with respect to this $55.73, and this he has not done. Decision will be entered under Rule 50. Footnotes
1. The cases are numerous and each case must by its nature be decided on its own fact situation. See in particular Commissioner v. Field, 67 Fed. (2d) 876↩, wherein taxpayer was engaged in the business of raising and racing horses and was allowed to reduce gross income by the loss incurred in operating his horse farm.
2. Quotations included in the above sentence are taken from Samuel Riker, Jr., Executor, 6 B.T.A. 890↩, in which it was held that taxpayer was entitled to deduct his farm loss.
3. Such a taxpayer is entitled to a deduction for cost of lodging while away from home. E. G. Leach, 12 T.C. 20↩.
4. See James Schulz, 16 T.C. 401↩, promulgated February 20, 1951.
5. Even during hearings this Court has permitted either party by the exercise of its discretionary powers to amend their pleadings as provided for under Rule 17 of Rules of Practice Before The Tax Court of the United States. Rule 19 (d), however, is clear and explicit, permitting us no discretion. See Louis Halle, 7 T.C. 245, 248, in which this Court held the issue was not properly presented where taxpayer made an oral plea at the hearing but failed to reduce the plea to writing and file it with the Court. See also Buffalo Wills-Sainte Claire Corp., 2 B.T.A. 364↩.
6. Regulations 111. Sec. 29.23(a)-1. Business Expenses. - * * * Double deductions are not permitted. Amounts deducted under one provision of the Internal Revenue Code cannot again be deducted under any other provision thereof. * * *↩