Robert J. Harder and Marguerite Harder, Husband and Wife v. Commissioner. Robert J. Harder Inc. v. Commissioner.
Harder v. Commissioner
Docket Nos. 60586, 60587.
United States Tax Court
T.C. Memo 1958-97; 1958 Tax Ct. Memo LEXIS 132; 17 T.C.M. (CCH) 494; T.C.M. (RIA) 58097; May 27, 1958
*132 Certain deductions claimed as business expenses, and disallowed by respondent as not having been substantiated, allowed in part. Respondent's disallowance of certain depreciation deductions claimed by the individual petitioners sustained for lack of proof. Petitioner Robert J. Harder purchased an old rundown house, remodeled it, rented one-half of it, and used the other half as a winter home. Held, the cost of painting and scraping the floors was a capital expenditure. On January 2, 1952, petitioner Robert J. Harder transferred all the assets and liabilities of his individual business to petitioner corporation in exchange for all the issued stock of the corporation. Simultaneously therewith Harder, the corporation, and three individuals entered into a five-party agreement under the terms of which the three individuals "from time to time on or after July 3, 1952 * * * shall have the right to purchase" from Harder the stock he received in the transfer, but were not under any obligation to buy. Held, the transfer by Harder of his business to the corporation was a tax-free exchange under section 112(b)(5) and (h) of the Internal Revenue Code of 1939. Held, further, under section *133 113(a)(8) of the 1939 Code, the basis to the corporation of the assets transferred to it was the same as it was in the hands of the transferor. Joseph J. Lyman, Esq., 1001 Connecticut Avenue, Northwest, Washington, D.C., for the petitioners. Charles B. Markham, Esq., for the respondent. ARUNDELL
Memorandum Findings of Fact and Opinion ARUNDELL, Judge: Respondent determined deficiencies in income tax for the taxable years ended December 31, 1951, 1952, and 1953, as follows: *134 Individual
Corporate
Year
Petitioners
Petitioner
1951
$ 205.86
1952
1,489.14
$4,383.12
1953
2,007.86
The individual petitioners now concede the deficiency for the year 1951. Several of the errors assigned relating to the years 1952 and 1953 have also been conceded by petitioners. The errors assigned which are still contested by petitioners are: (1) whether the respondent erred in disallowing certain deductions claimed by the individual petitioners for the years 1952 and 1953, which claimed deductions are set out more fully in our findings and opinion, and (2) whether the respondent erred in adding to the corporation's net income for 1952 an inventory adjustment of $14,466.16 and depreciation of $1,240. Our determination of the second assignment of error depends upon whether the transfer on January 2, 1952, of petitioner Robert J. Harder's sole proprietorship business to Robert J. Harder Inc., a newly formed corporation, in exchange for all of the latter's issued stock and the assumption by the corporation of all the liabilities of the sole propritorship was a taxable or tax-free exchange. In the petition filed in Docket No. 60587, the corporate petitioner *135 alleged that the transfer was a "tax-free exchange," which allegation was admitted by respondent in his answer. The corporate petitioner, however, filed an amended petition and alleged that the transfer "was not a tax-free transfer." Because of this amended petition, the respondent, in Docket No. 60586, filed an amendment to the answer, in which he alleged and averred in part as follows: "If it should be judicially determined that the transfer of assets by Robert J. Harder to Robert J. Harder, Inc. on or about January 2, 1952 in return for 300 shares of Class A stock and 300 shares of Class B stock of Robert J. Harder, Inc., is not a tax-free transfer, then a taxable exchange occurred on said date and any gain to petitioner, Robert J. Harder, from the transaction, should be computed and recognized in accordance with the provisions of sections 111(a) and 112(a), respectively, of the Internal Revenue Code of 1939." The cases were consolidated for trial and opinion. Findings of Fact The stipulations of fact filed at the hearing are found as stipulated. The individual petitioners are husband and wife residing in Lynbrook, Long Island, New York. The petitioner in Docket No. 60587 *136 is a corporation organized under the laws of the State of New York on December 21, 1951. It commenced active business on January 2, 1952. The returns for the taxable years involved of all the petitioners were filed with the district director of internal revenue at Brooklyn, New York. Petitioner Robert J. Harder (hereinafter called Harder) has been engaged in the insulation and acoustical tile contracting business for 18 years in and around Lynbrook, New York. For a number of years, prior to December 31, 1951, Harder conducted the business as a sole proprietor. After January 1, 1952, Harder continued to perform his business functions in a similar way but as president of the petitioner corporation rather than as a sole proprietor. Among the deductions claimed by the individual petitioners in their joint returns for 1952 and 1953 are the following items: Item
1952
1953
Business entertainment
(not reimbursed)
$1,000.00
$1,000.00
Depreciation of automo-
biles
1,500.00
2,250.00
Portion of residence used
for business
240.00
240.00
Repairs to Florida prop-
erty
1,666.50
Depreciation of Florida property
325.00
The respondent disallowed all of *137 the above items except that he allowed $750 depreciation of automobiles for each of the years 1952 and 1953 and that he also allowed $70.14 of the $325 depreciation of Florida property for 1953. At the hearing, counsel for petitioners conceded that the disallowance of depreciation of automobiles for 1953 in the remaining amount of $1,500 "was a correct disallowance." Harder, as an officer of the petitioner corporation, in conjunction with other salesmen, would solicit business firms and property owners for the purpose of obtaining contracts to insulate and renovate such properties with insulation materials and acoustical tile. The petitioner corporation would contract to do such work on various types of buildings, including homes, commercial buildings, schools, and some original construction. Harder kept no record of any business entertainment expenses incurred by him in 1952 and 1953 and could not testify with exactitude as to persons he entertained or the dates of such entertainment during such years. He arrived at the amounts of $1,000 deducted in the joint returns by estimating that he spent more than those amounts as senior officer of Robert J. Harder Inc., in entertaining *138 people at dinner, taking them to ball games and occasionally out on a fishing trip. During those years Harder owned two boats, one in New York and one in Florida. The cost of the boats was $475 and $1,000, respectively. During the years 1952 and 1953, checks were issued for expenses of operating the New York boat in the total amounts of $462.86 and $633.42, respectively. In addition to these expenses, Harder paid in cash about $350 to $400 a year for gasoline and for painting the New York boat each spring. In 1952, the Florida boat cost Harder about $500 for gasoline, repairs, and painting. Harder estimated that about three-quarters of the use of the boats was for the purpose of entertaining prospective customers. Harder was not reimbursed for any of the expenses of the boats. Harder was not on a guaranteed salary. A part of his compensation represented commissions on sales made for the corporation. Most of the officers of the corporation were also salesmen and were paid a commission on the sales they made. The corporation had a rule that a prospective customer must be contacted at least once a month or oftener if a sale was imminent. During the years 1952 and 1953, Harder, in *139 earning his commissions, took a prospective customer out to lunch or dinner about once or twice a week and he estimated that the average check would amount to between $10 and $15. In addition to meals, Harder estimated that he spent between $8 and $10 a week for other entertainment, including ball games. Harder has never been reimbursed by the corporation for any of these expenses. During 1952 and 1953, Harder actually expended at least $850 each year for entertainment of prospective customers of Robert J. Harder Inc. in securing sales for that company on a commission basis. During the year 1952, the individual petitioners owned two automobiles. One was used principally by the husband and the other car was used principally by the wife. The above-mentioned depreciation of $750 allowed by the respondent was allowed on the car used principally by the husband. Petitioners have failed to prove that any depreciation is allowable on the car used principally by the wife. During the years in question the individual petitioners were joint owners of several small rental income properties comprising in all 12 apartments. One of these apartments consisted of about one-half of the house in *140 which petitioners lived. The other half of the house consisted of 5 rooms, including a room which was used primarily as an office in connection with the rental business. This room was furnished with office furniture, had a separate outside entrance, a separate lavatory, and a telephone. Petitioners paid at least $900 a year for insurance, fuel, utilities, and plumbing in maintaining the entire house. The house cost $13,500 and had a useful life of about 20 years. The cost, including depreciation, to petitioners of maintaining the room used as a business office was at least $155 for each of the years 1952 and 1953. In January 1953, the individual petitioners purchased a house in Hollywood, Florida, for $6,000. The deed was signed in March 1953. The purpose in buying the house was to repair it, rent one-half of it, and use the other one-half as a winter home. At the time the house was purchased it was in a run-down condition and was unrentable. Harder spent $10,133 in remodeling the house. Included in this latter amount was $2,526 for painting and scraping floors. One-half of the house was rented in November 1953. Petitioners, in their joint return for 1953, reported $175 as rent *141 received and deducted therefrom $1,666.50 for repairs and $325 for depreciation. The respondent in his deficiency notice disallowed all of the $1,666.50 for repairs and $254.86 of the $325 claimed for depreciation. The cost of painting the house acquired by petitioners in 1953 and scraping the floors thereof was a capital expenditure. On January 2, 1952, Harder transferred his sole proprietorship business to the petitioner corporation herein and received in exchange 300 share of its Class A (voting) stock and 300 shares of its Class B (nonvoting) stock. This constituted all of the corporation's outstanding stock on January 2, 1952. An additional 300 shares of each class of stock were authorized but were not issued at that time. Simultaneously with the above-mentioned transfer, a five-party agreement dated January 2, 1952, was entered into between Harder as first party, Harder's nephew A. James Harder as second party, Harder's son Richard L. Harder as third party, Eileen Coulon as fourth party, and petitioner corporation, referred to in the agreement as the corporation. Under the terms of this agreement, Richard, James, and Coulon "from time to time on or after July 3, 1952 * * *142 * shall have the right to purchase" from Harder shares of stock in the corporation in certain designated portions set forth in the agreement. Richard and James were given the right to purchase from Harder after July 3, 1952, 100 shares each of Class B (nonvoting) stock and 150 shares each of Class A (voting) stock, and Coulon was given the right to purchase 100 shares of Class B stock. At such time as they each had purchased an aggregate of 100 shares of Class B stock, the corporation agreed it would exchange for the same an equal amount of its authorized but unissued Class A stock. It was further agreed that when Harder sold 450 of his 600 shares (300 Class A and 300 Class B), he had the option to sell his remaining shares to the corporation or to the other stockholders. No further stock was to be issued by the corporation. At any time prior to the sale of 75 per cent of the total outstanding stock, the younger Harders and Coulon had the right to withdraw from the agreement and to require Harder to repurchase at par value any stock purchased by the withdrawing party. Harder retained the right to repurchase the stock of any of the other parties who left the employment of the corporation; *143 to repurchase the stock of any party desiring to sell, assign, transfer, or pledge his stock to an outsider; and to repurchase all the stock if the corporation had a net profit in any year of less than $1,000. The charter of the petitioner corporation listed the par value of both Class A and B stock as $100 per share. The plan contemplated under the agreement of January 2, 1952, was to give Richard, James, and Coulon an opportunity to buy Harder's stock beginning July 2, 1952, and to accelerate their payments as they went along. There was no compulsion on the younger Harders and Coulon to buy the stock. Among the assets of Harder's sole proprietorship at the close of business on December 31, 1951, was a closing inventory of $34,914.70. This figure was a true and correct statement of Harder's proprietorship inventory on December 31, 1951. Included in the assets of the proprietorship which Harder transferred to the corporation on January 2, 1952, was a total inventory listed by Harder at $49,380.86. This figure was included in computing the $60,000 which Harder estimated as the value of the stock he received on January 2, 1952. The $49,380.86 was also included on the 1952 Federal *144 income tax return of the corporation as its opening inventory. The $14,466.16 difference between the two inventory items is accounted for, as hereinafter stated. For several years, Harder's sole proprietorship had accumulated a quantity of materials which Harder considered to be unsalable, unusable, and obsolete, or "left over" odds and ends from a particular job. This material over the years had been marked off or charged off, i.e., it had been carried in the closing inventory of each year as being of no value. However, the material had not been thrown away as Harder hoped it could be sold. When the plan arose to set up the corporation, Harder, his son, and his nephew, with the help of Coulon, went through the warehouse and looked over the obsolete materials, item by item, placing an estimated value on each and reaching a total of $14,466.16. They listed some of the items at cost and some at less than cost. The items had been carried at no price before, and the corporation inventory represented the first time such items had been given a price. Harder included among the depreciable assets of his sole proprietorship, on his 1951 return, trucks acquired in 1951 with a cost basis *145 of $10,000 on which he took depreciation for that year of $640. When Harder transferred his business to the corporation he transferred the trucks at a value of $9,000 and some other assets at a value of $7,200, or a total value of $16,200. These other assets consisted of insulation blowers, hose, machinery and tools and had a basis of zero in Harder's sole proprietorship business. The petitioner corporation claimed a deduction for depreciation on its 1952 return of $3,240 computed at 20 per cent of the above-mentioned total amount of $16,200. The respondent disallowed $1,240, representing 20 per cent of the net write-up of $6,200. The transfer by Harder of the assets of his sole proprietorship on January 2, 1952, to the petitioner corporation was a transaction on which no taxable gain or loss is recognizable. Opinion The respondent disallowed the $1,000 claimed by Harder on the joint returns for 1952 and 1953 for entertainment expenses on the ground that the claimed expenses were unsubstantiated. In his brief he raises the question whether Harder is entitled to deduct any amount in view of the fact that during those years Harder was the senior officer of the corporation. The *146 respondent argues as follows: "Expenses of entertaining incurred by the president of a corporation, paid by the president from personal funds and not reimbursed to him by the company, may not be deducted by the president on his individual return. Such expenses are, if at all, ordinary and necessary expenses of the corporation and not such expenses of earning his salary as president. Andrew Jergens (1951) 17 T.C. 806, citing Hal E. Roach (1930) 20 B.T.A. 919. See also Jacob M. Kaplan et ux. (1953) 21 T.C. 134, appeal to C.A. 2, dismissed November 26, 1954. "Harder can disengage himself from the rule set forth in the Jergens, Roach and Kaplan cases only by showing that the expenses incurred were incurred in earning sales commissions (as distinguished from his officer's salary) or by showing that he was obligated to incur such expenses without reimbursement. From the record it is clear that he has shown neither." The facts in the instant case are different from the facts in the Jergens, Roach, and Kaplan cases cited by the respondent. Here, Harder *147 was not only the senior officer of the corporation but he was also a salesman for the corporation and was paid a commission on all sales made by him for the corporation. He was on an incentive basis and, in order to earn these commissions, it was necessary for Harder to entertain the prospective customers in order to get their business. The evidence introduced by Harder convinces us that he spent at least $850 in each of the years 1952 and 1953 in so doing. We hold that Harder is entitled to deduct that amount in each of the years in question. Cohan v. Commissioner, 39 Fed. (2d) 540; Lucien I. Yeomans, 5 T.C. 870; Benjamin Abraham, 9 T.C. 222, 228. Upon the basis of our findings, we sustain the respondent's determination for the year 1952 insofar as it relates to his disallowance of depreciation of the automobile used principally by petitioner Marguerite Harder. The respondent disallowed the $240 claimed by the individual petitioners on their joint returns for 1952 and 1953 for "portion of residence used for business" on the ground that the claimed deductions were unsubstantiated. We think the evidence offered by petitioners clearly shows *148 that during the years in question petitioners used one room of the house in which they lived as an office in connection with their rental business and that the cost of maintaining that room was at least $155 for each of such years. We hold that petitioners are entitled to deduct that amount as an expense in each of the years 1952 and 1953. Cohan v. Commissioner, supra; V. T. H. Bien, 20 T.C. 49, 56. In their 1953 return, the individual petitioners deducted $1,666.50 for repairs to Florida property and $325 for depreciation of such property. Petitioners purchased the property for the purpose of renting one-half of it and using the other half as a winter home. We agree with the respondent that the expenditures necessary to put the house in a livable condition, including the entire amounts expended for painting and scraping the floors, should be capitalized. I. M. Cowell, 18 B.T.A. 997, 1002; Ethyl M. Cox, 17 T.C. 1287; Ehrlich v. Commissioner, 198 Fed. (2d) 158 (C.A. 1, 1952), affirming our memorandum findings of fact and opinion [10 TCM 744]. As to depreciation of the Florida property, we do *149 not think petitioners have shown that they are entitled to deduct depreciation for a longer period than the 2-month period allowed by the respondent. This property was not rentable at the time it was acquired and the evidence does not show when the remodeling was completed. We sustain the respondent's determination on this issue for lack of proof. We think the transfer of Harder's sole proprietorship business to the corporation was a tax-free exchange under section 112(b)(5) and (h) of the Internal Revenue Code of 1939. [1] The facts are clear that on January 2, 1952, Harder transferred his sole proprietorship business to the petitioner corporation solely in exchange for all of the issued capital stock of such corporation. Since immediately after the exchange Harder owned all the outstanding stock of the corporation, he was in "control" of the corporation as that term is defined under section 112(h) of the 1939 Code. It follows, therefore, that no gain or loss should be recognized on the exchange. *150 Petitioners contend that because of the five-party agreement dated January 2, 1952, mentioned in our findings, the transfer to the corporation was not a tax-free exchange under section 112(b)(5) and (h) of the 1939 Code. In so contending, they rely principally upon May Broadcasting Co. v. United States, 200 Fed. (2d) 852 (C.A. 8, 1953). We do not think this case is in point. There, the buyer of stock in the transferee corporation was clearly obligated to purchase such stock simultaneously with or immediately after the transfer, and its agreement to do so was an integral part of the transfer of assets by the transferor. In the instant case, Harder's nephew and son and Coulon were under no obligation whatever to buy any of the corporation's stock from Harder. All they had was a right to purchase "from time to time on or after July 3, 1952." What happened on or after July 3, 1952, has no bearing upon the question at issue. Samuel Insull, Jr., 32 B.T.A. 47, 55 reversed on another issue by C.A. 7 at 87 Fed. (2d) 648. We hold that the transfer by Harder of his business to the corporation on January 2, 1952, was a taxfree exchange. American Bantam Car Co., 11 T.C. 397, *151 affirmed per curiam by C.A. 3, 177 Fed. (2d) 513, certiorari denied 339 U.S. 920. In regard to the "basis" of property, section 113(a)(8) of the Internal Revenue Code of 1939 provides in part that: "If the property was acquired after December 31, 1920, by a corporation - "(A) by the issuance of its stock or securities in connection with a transaction described in section 112(b)(5) * * * then the basis shall be the same as it would be in the hands of the transferor * * *." In our findings we have found that at the time of the transfer of Harder's business to the corporation on January 2, 1952, the basis in the hands of Harder (the transferor) of the inventory was $34,914.70; that the basis of the trucks was $10,000; and that the basis of the insulation blowers, hose, machinery and tools were zero. Under section 113(a)(8), supra, we hold that the basis of such property in the hands of petitioner corporation "shall be the same as it would be in the hands of the transferor." It follows that the corporation's use of $49,380.86 as its opening inventory was contrary *152 to law. This distortion on its part resulted in a higher cost of goods sold, and a corresponding reduction in its gross profits for the year 1952. Likewise, the basis to the corporation of its depreciable assets is the same as it was in the hands of the transferor. We hold that the respondent did not err in adding to the corporation's net income for 1952 an inventory adjustment of $14,466.16 and depreciation of $1,240. Decisions will be entered under Rule 50. Footnotes
1. SEC. 112. RECOGNITION OF GAIN OR LOSS. * * *
(b) Exchanges Solely in Kind. - * * *
(5) Transfer to corporation controlled by transferor. - No gain or loss shall be recognized if property is transferred to a corporation by one or more persons solely in exchange for stock or securities in such corporation, and immediately after the exchange such person or persons are in control of the corporation; * * *
(h) Definition of Control. - As used in this section the term "control" means the ownership of stock possessing at least 80 per centum of the total combined voting power of all classes of stock entitled to vote and at least 80 per centum of the total number of shares of all other classes of stock of the corporation.↩