Franklin S. Garner and Emily Garner v. Commissioner.
Franklin S. Garner & Emily Garner v. Commissioner
Docket No. 25774.
United States Tax Court
1951 Tax Ct. Memo LEXIS 1; 10 T.C.M. (CCH) 1243; T.C.M. (RIA) 51374; December 29, 1951
*1 Held: That petitioner's war loss, if any, was controlled by section 127, I.R.C. and that petitioner may not predicate such loss on section 23 (e), I.R.C.
Arthur Weissbarth, Esq., for the petitioners. Robert Margolis, Esq., and Francis J. Butler, Esq., for the respondent. VAN FOSSAN determined a deficiency of $2,714.21 in petitioners' income tax for the year 1945, consequent on his disallowance of a loss on the sale of certain property in France. Findings of Fact Petitioners are husband and wife residing in the State of New *2 York, who filed their return for the year 1945 with the collector of internal revenue for the first district of New York. Franklin S. Garner, hereinafter sometimes referred to as the petitioner, owned two textile mills in Czechoslovakia, one of which he had operated since 1912, the second mill being purchased in 1927, and both mills being engaged in the manufacture of linen table sets, consisting of tablecloths and napkins. He came to the United States in July of 1939, where he changed his name from Frank Geduldiger to Franklin S. Garner. In 1938 the German government occupied Vienna and at that time it appeared that Germany would make a new strike across the Czechoslovakian border. The petitioner, who is of Jewish extraction, motivated by fear of the threatened German invasion, undertook to salvage what he could of his property. It was impossible to move the machinery and buildings so petitioner proceeded to ship out as large a quantity of manufactured goods then on hand as possible. The petitioner shipped goods to four different addresses in France, including one Max Steiner in Paris. Steiner left France at the end of 1941 but before departure, stored the goods in question *3 in a basement, which basement he walled up. When war broke out in France, Steiner went to Marseilles, and later to the United States. On January 10, 1941, petitioner, who was then in the United States, assigned his right, title and interest in the goods in Steiner's possession to Multitex Corporation, a New York corporation in which petitioner owned all the stock and which corporation had its place of business in New York City. Steiner returned to France the latter part of October or early November 1945, and found the goods so stored to be in generally good condition though somewhat mismatched. Steiner sold the goods in France during the early part of November 1945 at a gross sales price of 251,000 French francs. He deducted storage and incidental expenses and a commission of 10 per cent, leaving net proceeds of 217,000 French francs. After the goods were sold in 1945 the proceeds of the sale were credited to the Multitex Corporation, and a check, made out to Multitex for the proceeds, was later handed to petitioner. Petitioner computed his loss on the entire transaction as follows: He multiplied the aggregate alleged value of the goods consigned to Steiner, 216,826.45 French *4 francs, by 1.25 (the pegged French franc Czechoslovak koruna rate in 1938 and 1939), thus arriving at 271,033.06 koruny. To this figure he added 5,000 Kc for freight, thus arriving at a total of 276,033.06 Kc. This figure was divided by 110 in order to eliminate his claimed mark-up, thus arriving at an alleged net cost of 250,939.15 Kc. The last figure above was converted into United States currency at the official average rate prevailing in 1939 of 29 Czech Kc for one United States dollar, thereby arriving at a cost of $8,653.07. Petitioner then converted the net proceeds of 217,000 French francs into United States currency at the official rate of exchange then applicable (50 French francs to one United States dollar), thus arriving at $4,340. This figure was deducted from $8,653.07, leaving a loss to petitioner of $4,313.07, this being the loss claimed in petitioners' return, which loss the respondent disallowed. Opinion VAN FOSSAN, Judge: In their 1945 return petitioners claimed a loss of $4,313.07 under section 23 (e), I.R.C. Respondent disallowed the deduction and found a deficiency of $2,714.21. At the hearing and on brief respondent contends that *5 the transaction here involved is governed exclusively by section 127, I.R.C., which deals with war losses and under which, if the property be recovered, the basis of loss is the fair market value of the property at the time recovered. Pursuing this position further, respondent contends that the property in question was sold within a month after recovery in 1945 and that, accordingly, and for aught that appears, the fair market value of the property is the same as the sale price with no resulting gain or loss. Respondent also contends petitioner sustained no loss because he assigned the proceeds of the property to his wholly owned corporation in 1941. Petitioner contends that section 127, I.R.C. is not exclusive of other methods of determining war losses; that his case is not controlled by such section; that he predicates his claim solely on section 23 (e); and that a loss arose due to the variation of the exchange rate when foreign money was converted into dollars. A holding which regatives petitioner's basic contention is implicit, if not specific, in Abraham Albert Andriesse, 12 T.C. 907, followed in Ezra & Lydia Shahmoon, 13 T.C. 705, *6 affirmed 185 Fed. (2d) 384. The effect of this holding is that war losses, such as petitioner's, must be claimed and proved under section 127, I.R.C.
Were this case not ruled by the above decided cases, decision for the respondent would still be required by the facts here present. If section 23 (e), I.R.C. be taken as the applicable statute, petitioner has not satisfactorily proved the cost basis of the property involved (one of the difficulties which section 127 was designed to avoid). On the other hand, if section 127 be considered applicable, then the loss is confined to the difference between the fair market value at the time of recovery and the sale price. The recovery occurred late in October or early in November 1945, and the sale occurred in November of the same year. On the record here, the sale price appears as the best evidence of the fair market value on the date of recovery, with the consequence of neither gain nor loss. It is not necessary to rule on the tax effect of the conversion by petitioner's agent of part of the proceeds of sale into French industrial stocks nor is it requisite that we consider the *7 effect of the assignment of the proceeds to petitioner's wholly owned corporation. Decision will be entered for the respondent