Eric E. Franke and Elizabeth M. Franke v. Commissioner.
Franke v. Commissioner
Docket No. 36887.
United States Tax Court
1953 Tax Ct. Memo LEXIS 307; 12 T.C.M. (CCH) 373; T.C.M. (RIA) 53116; April 7, 1953
Eric E. Franke, pro se. Francis J. Butler, Esq., for the respondent. RAUM
Memorandum Findings of Fact and Opinion The respondent determined a deficiency in the income tax of petitioners in the amount of $649.76 for the calendar year 1950. The sole issue is whether the petitioners are entitled under Section 23 (e) of the Internal Revenue Code to a deduction of $6,000 in the year 1950, representing a loss alleged to have been sustained in that year as the result of the confiscation by the Czechoslovakian government in the year 1946 of certain real property in that country which was owned by one of the petitioners. Findings of Fact Petitioners, husband and wife, are residents of Brooklyn, New York. Their joint income tax return for the calendar year 1950 was filed with the collector of internal revenue for the first district of New York. In 1915 petitioner Elizabeth M. Franke (hereinafter referred to as the *309 petitioner) acquired by inheritance from her father, who died on March 18, 1915, a three-fourth's interest in certain real property located in Troppau, Austria. Her mother acquired the remaining one-fourth interest. Her father inherited the property from his father when she was eight years old. Troppau became part of Czechoslovakia in 1919 and its name was changed to Opava. The property acquired by petitioner was a house which was 15 years old in 1915. It had two five-room apartments and one two-room apartment. The house was of stone and brick construction and had modern facilities, such as running water, gas, electricity, bath, etc. The janitor occupied the two-room apartment. Petitioner and her mother occupied one of the five-year apartments from 1915 to 1936. In 1936 the other five-room apartment was rented by a Government official. In November 1936 a mortgage was taken out on the property in the amount of 60,000 Czechoslovak crowns. The property was mortgaged at that time because petitioner needed money for her dowry. The amount of the mortgage represented one-third of the value of the property in 1936. Petitioner left Czechoslovakia for the United States in December 1936. *310 She never returned to Czechoslovakia. Her mother continued to live in the house from 1936 to 1946. In 1946, the petitioner's husband wrote to an attorney in Opava, Czecholovakia, with reference to petitioner's property. A letter dated December 4, 1946, was received from this attorney in which he requested information as to the status of the property and the mortgage debt as of January 1, 1939, and as to the date of birth, year of marriage, and citizenship of petitioner. In another letter dated March 27, 1947, the attorney asked for proof of petitioner's United States citizenship and for a power of attorney. He advised petitioner that he had registered the property at the Tax Administration in Prague and had declared the value of the entire property as of November 15, 1945, to be 132,000 Czechoslovak crowns, of which petitioner's share would be 99,000. On February 22, 1948, the petitioner wrote to the Department of State in Washington, D.C., relative to the property at Opava. That Department in a letter dated March 25, 1948, asked her to submit further information regarding the property in the form of an affidavit. She executed the affidavit on June 7, 1948. The Department acknowledged *311 its receipt in a letter to petitioner dated July 9, 1948, and informed her that, in an effort to be of every possible assistance in her efforts to recover her property, it was transmitting the affidavit to the American Embassy at Prague, Czechoslovakia, urging that an effort be made to ascertain the present status of the property and that the appropriate Czechoslovak authorities be requested to recognize and protect the American interest involved. On April 26, 1950, the Department of State forwarded to the petitioner a report which it had received from the American Embassy at Prague, dated March 31, 1950, which read as follows: "Upon receipt of the reference Operations Memorandum the Embassy communicated with the claimant's attorney, Dr. Boleslav Havlicek of Opava, Czechoslovakia, and supported his application for restitution of Mrs. Franke's property, i.e., a three-fourth interest in the house No. 10 Rooseveltova ulice, Opava, by forwarding a note to the Czechoslovak Ministry of Foreign Affairs with the request that the appropriate Czechoslovak authorities be informed of the American interest involved and that they be asked to restitute the American property in question. "After *312 the Embassy had repeatedly urged the Czechoslovak authorities, through diplomatic channels, to expedite action in the matter the Embassy has now received the following report from the Ministry of Foreign Affairs: 'The decision of the Central National Committee of Opava dated July 17, 1946, which became legally effective on September 12, 1946, and under which the real property of the abovesaid person was confiscated, is valid as she was of German nationality and did not acquire American citizenship until June 10, 1947, i.e., after September 17, 1938, which date is decisive for the determination of the citizenship status of the person in question. 'For this reason the property of Elizabeth Franke, i.e., 3/4 of the house located at Opava, Rooseveltova 10, is subject to confiscation pursuant to Art. 1, Section 1, No. 2 of the Decree No. 108/1945.' "In as much as the Czechoslovak authorities have stated that the property of Mrs. Elizabeth Franke is subject to confiscation and as the Embassy has no facilities for examining the reports or revising the decisions which are made by foreign authorities, the claimant may desire to consult her local attorney as to the advisability of filing *313 a protest against the confiscatory decision with the Supreme Court of Administration which seems to be the only, but rather expensive and lengthy, procedure of attempting to obtain cancellation of the unfavorable decision in this case." In the joint income tax return filed by petitioner and her husband for the year 1950, a deduction of $6,000 was claimed because of the loss of property owned by petitioner in Czechoslovakia. This deduction was disallowed by the respondent. Opinion RAUM, Judge: Petitioner contends that under the provisions of Section 127 (a) (2) [1] of the Internal Revenue Code she sustained a war loss in 1941 of the three-fourth's interest in property in Opava, Czechoslovakia, which she had inherited in 1915 from her father; that she recovered her property interest in 1945 after the termination of German occupation; and that she had possession of the property from that time until it was confiscated on July 17, 1946, by the Czechoslovak National Committee of Opava. She urges, however, that the 1946 confiscation did not fix the year of her property loss and that it did not become actual and present until 1950, when her "application for restitution" *314 was adversely decided by the Czechoslovak authorities. We are satisfied that the petitioner owned property in Czechoslovakia, an area under the control of Germany when war between that country and the United States was declared on December 11, 1941. We may assume for present purposes that under the provisions of Section 127 (a) (2) her property was deemed to have been destroyed or seized in 1941 and she became entitled to a loss deduction at that time, notwithstanding that she was a German and that there does not appear to have been any confiscation by the occupying German authorities. We may also assume that she recovered her three-fourth's property interest within the meaning of Section *315 127 (c)[2] in 1945, by reason of her mother's continued occupancy of the property (cf. Ervin Kenmore, 18 T.C. 754; Andrew P. Solt, 19 T.C. 183); and that she held it until 1946, when the Czechoslovak Central National Committee of Opava confiscated it because petitioner was of German nationality.
*316 There is no evidence in this case indicating that the petitioner received any tax benefit from her war loss in 1941 or that she included any amount in gross income in 1945 when she allegedly recovered her property. In these circumstances section 127 (d)[3] provides that the basis for gain or loss upon the property recovered is the fair market value of the property at the date of recovery. *317 However, the difficulty with petitioner's case is that she claims a deduction for the year 1950, and we are not convinced that she sustained any loss in 1950. Her property was confiscated in 1946. While petitioner on brief attempts to minimize the effect of this confiscation by stating that it "was not carried out by duly established authority, but by a self-appointed local 'National Committee'", we have no evidence that the confiscation was not authorized by the laws of Czechoslovakia in effect in 1946. According to a report of the Ministry of Foreign Affairs of Czechoslovakia, which appears in an exhibit offered in evidence by petitioner, the decision of the Central National Committee to confiscate petitioner's property "became legally effective on September 12, 1946". This was the event which fixed the loss of petitioner's property, and any loss sustained was deductible in 1946. There was no certainty at the end of that year that her property would ever be restored to her. "It would require a high degree of optimism to discern in the seizure" of her property by the Czechoslovak authorities "more than a remote hope" that it might ultimately be recovered. Cf. United States v. S. S. White Dental Manufacturing Co., 274 U.S. 398; *318 Commissioner v. Brown, 54 Fed. (2d) 563, 569 (C.A. 1), certiorari denied, 286 U.S. 586. Such a hope does not justify the postponement of a loss deduction. Petitioner has not proved that she sustained a deductible loss in 1950. We deem it unnecessary, therefore, to discuss or decide whether, if any loss had been sustained in that year, petitioner has proved the amount of such loss or has established that it would be deductible, in whole or in part, under any of the applicable provisions of Section 23 (e) of the Internal Revenue Code. Decision will be entered for the respondent. Footnotes
1. SEC. 127. WAR LOSSES. (a) CASES IN WHICH LOSS DEEMED SUSTAINED, AND TIME DEEMED SUSTAINED. - For the purposes of this chapter - * * *
(2) PROPERTY IN ENEMY COUNTRIES. - Property within any country at war with the United States, or within an area under the control of any such country on the date war with such country was declared by the United States, shall be deemed to have been destroyed or seized on the date war with such country was declared by the United States. * * *↩
2. SEC. 127. WAR LOSSES. (c) RECOVERIES. (1) GENERAL RULE. - Upon the recovery in the taxable year of any money or property in respect of property considered under subsection (a) as destroyed or seized in any prior taxable year, the amount of such recovery shall be included in gross income to the extent provided in paragraph (2), unless the provisions of paragraph (3) are applicable to the taxable year pursuant to an election made by the taxpayer under the provisions of paragraph (5). (2) INCLUSION IN GROSS INCOME. - (A) Amount of Recovery. - The amount of the recovery of any money or property in respect of property considered under subsection (a) as destroyed or seized in any prior taxable year shall be an amount equal to the aggregate of such money and the fair market value of such property, determined as of the date of the recovery. (B) Amount of Gain Includible. - To the extent that the amount of the recovery plus the aggregate of the amounts of previous such recoveries do not exceed that part of the aggregate of the allowable deductions in prior taxable years on account of the destruction or seizure of property described in subsection (a) which did not result in a reduction of any tax of the taxpayer under this chapter or chapter 2, such amount shall not be includible in gross income and shall not be deemed gain upon the involuntary conversion of property as a result of its destruction or seizure. To the extent that such amount plus the aggregate of the amounts of previous such recoveries exceed that part of the aggregate of such deductions, which did not result in a reduction of any tax of the taxpayer under this chapter or chapter 2 and do not exceed that part of the aggregate of such deductions which did result in a reduction of any tax of the taxpayer under this chapter or chapter 2, such amount shall be included in gross income but shall not be deemed a gain upon the involuntary conversion of property as a result of its destruction or seizure. * * * For the purposes of this paragraph an allowable deduction for any taxable year on account of the destruction or seizure of property described in subsection (a) shall, to the extent not allowed in computing the tax of the taxpayer for such taxable year, be considered an allowable deduction which did not result in a reduction of any tax for the taxpayer under this chapter or chapter 2.↩
3. (d) BASIS OF RECOVERED PROPERTY. - The unadjusted basis of property recovered in respect of property considered destroyed or seized under subsection (a) shall be determined under this subsection. Such basis shall be an amount equal to the fair market value of such property, determined as of the date of the recovery, reduced by an amount equal to the excess of the aggregate of such fair market value and the amounts of previous recoveries of money or property in respect of property considered under subsection (a) as destroyed or seized over the aggregate of the allowable deductions in prior taxable years on account of the destruction or seizure of property described in subsection (a), and increased by that portion of the amount of the recovery which under subsection (c) is treated as a recognized gain from the involuntary conversion of property. Upon application of the taxpayer, the aggregate of the bases (determined under the preceding sentence) of any properties recovered in respect of properties considered under subsection (a) as destroyed or seized may be allocated among the properties so recovered in such manner as the Commissioner may determine under regulations prescribed by him with the approval of the Secretary, and the amounts so allocated to any such property so recovered shall be the unadjusted basis of such property in lieu of the unadjusted basis of such property determined under the preceding sentence.↩